# THE STATE v. WALTER HEADLEY, Appellant.

### Division Two, December 14, 1909.

1. **CARNAL KNOWLEDGE: Attempt: Instruction.** An instruction on the subject of an assault with an intent to ravish a girl five years old, by tearing her private parts with a greased finger, is set out in full in the opinion, and held to contain every essential element of the offense.

2. **———: No Penetration: Instruction for Rape.** Where the evidence clearly shows there was no penetration, the court very properly told the jury that they could not convict the defendant of rape, but, there being testimony that defendant with his finger, greased with vaseline, tore the private parts of the five-year-old child, they could convict him of an assault with intent to ravish, as elsewhere defined in the instructions.

3. **WITNESS: Children Five or Seven Years Old.** The competency of children five and a half and seven years of age to testify, is to be determined in each case by the trial judge by appropriate questions, and his decision is not open to review unless there be a clear abuse of his judicial discretion, or the witness be admitted or rejected upon an erroneous view of a legal principle. And in this case, where the trial judge carefully examined the two little girls before they were permitted to testify, as to their competency, and that resulted in indicating their legal capacity to do so, and there is nothing to indicate any abuse of judicial discretion, the judgment will not be reversed because their testimony was received, although without it there could have been no conviction.

4. **CARNAL KNOWLEDGE: Instruction for Common Assault.** The evidence in this case tends to establish guilt of an assault with intent to ravish, and that being the case defendant cannot complain that the court did not instruct for common assault—a lower grade of the same offense.

Appeal from Jackson Criminal Court.—*Hon. Wm. H. Wallace,* Judge.

AFFIRMED.

*Moore, Handy & Kimbrell* for appellant.

(1) The court erred in giving instructions 1 and 5. State v. Harney, 101 Mo. 470; State v. Riseling, 186 Mo. 531; State v. Owsley, 102 Mo. 678; State v. Priestley, 74 Mo. 24. (2) The court erred in admitting the evidence of Eunice Swift and Ethel Kelso for the reason that they were so young that they did not know the nature and obligation of an oath. 1 Stark. Evidence, sec. 22. (3) The court erred in failing to instruct the jury on common assault alone. State v. Scholl, 130 Mo. 400; State v. Priestly, supra; State v. Owsley, supra; State v. Dalton, 106 Mo. 469. In order to justify a conviction of assault with intent to rape, the evidence must show some acts and conduct of the accused that there is no reasonable doubt of his intent to gratify his lustful desire against the consent of the female, notwithstanding resistance on her part. Jones v. State, 90 Ala. 628. In order to warrant a conviction for assault with intent to commit rape the State must prove the following facts: ''That the defendant made an assault upon the girl; that the assault was accompanied with a specific intention to rape; with the specific intention to have carnal knowledge of the girl; to have carnal knowledge without her consent and by the use of such force as is sufficient to overcome such resistance as the girl should make.'' Shields v. State, 32 Tex. Crim. Rep. 498; State v. Scholl, supra; State v. Owsley, supra; State v. Priestley, supra; Franey v. State, 210 Ill. 206; State v. Riseling, 186 Mo. 521; Dunn v. State, 58 Neb. 807.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

(1) Defendant's counsel excepted to the ruling of the court in permitting prosecutrix, Eunice Swift, a child of five years, to testify. The trial court applied the test and, in its discretion, permitted the testimony. The second subdivision of section 4659, R. S. 1899, is as

follows: "A child under ten years of age who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly," is incompetent. It is not unusual to receive the testimony of children of tender age if they appear to be of sufficient understanding. Their competency is to be determined by their apparent capacity. It is a discretion within the sole province of the trial judge to determine their competency by appropriate questions, and his discretion is not open to review unless there be a clear abuse of judicial discretion, or the witness be admitted or rejected upon an erroneous view of the legal principle. State v. Nelson, 132 Mo. 198; Ridenhour v. Railroad, 102 Mo. 270; State v. Doyle, 107 Mo. 36; State v. Scanlon, 58 Mo. 204; 1 Greenleaf on Ev. (7 Ed.), sec. 367; 3 Rice on Ev., p. 289. (2) (a) Instruction 1 is a proper instruction and has been approved by this court. It told the jury that if they found the defendant guilty what punishment they might, in their discretion, assess. (b) Instruction 5 told the jury there was no evidence of penetration and defendant could not be convicted of rape, but only of assault with intent to rape. This was a valid and correct instruction. Sec. 2361, R. S. 1899; State v. Scott, 172 Mo. 536.

FOX, J.—The defendant in this cause was convicted upon an information, duly verified, filed in the criminal court of Jackson county on the 5th day of August, 1908, by the prosecuting attorney of said county, charging that the defendant on the 4th day of July, 1908, at the county of Jackson and State of Missouri, in and upon one Eunice Swift, a female child under the age of fourteen years, to-wit, of the age of five years, unlawfully and feloniously did make an assault, and her, the said Eunice Swift, then and there unlawfully and feloniously did carnally know and abuse, against the peace and dignity of the State. To this information

the defendant entered his plea of not guilty, and a trial of this cause was had on the 21st day of September following.

The evidence developed upon the trial upon the part of the State substantially tended to show that the prosecutrix, Eunice Swift, resided with her parents at No. 1815 Kansas Avenue, Kansas City, Missouri, in the lower rooms of a two-story frame apartment building, and at the time of the trial was five years and seven months old. The upper story of this building was occupied by Mr. and Mrs. Kelso and their daughter, Ethel, age seven years. The crime, according to the evidence of the State, was committed about 5 o'clock in the afternoon of July 4th. At the time of his arrest the defendant was employed by Browning-King as a stationary fireman. He had been an acquaintance of the Kelso family for about twelve or fourteen years, and with his wife and family had been invited by the Kelsos to their home to witness the display of fireworks on the evening of the 4th of July. Mr. Kelso, who was employed as a teamster, and the defendant, met at a saloon on the morning of the 4th of July and had a few rounds of drinks together. At this meeting Kelso extended an invitation to the defendant to have dinner with him on that day. The defendant arrived at the Kelso home about 1:30 in the afternoon, Mr. Kelso arriving between two and three o'clock. After their arrival at the Kelso home two or three cans of beer were drunk by them before dinner, dinner being served about four o'clock. Kelso being somewhat under the influence of liquor retired upon a bed in the dining-room during or just after the meal. After dinner the prosecutrix and the Kelso child were playing on the front porch upstairs in a hammock. On the invitation of Mrs. Swift, Mrs. Kelso went down stairs, leaving her husband on the bed asleep or at least in a stupor, and the defendant in the dining-room.

Mrs. Kelso testified that she was away not ex-

ceeding ten minutes when her daughter, Ethel, ran
down stairs. The mother of prosecutrix testified that
"Ethel had a very scared expression on her face," and
upon inquiry being made by her of the Kelso child as
to the whereabouts of the prosecutrix, Ethel replied
"that she was upstairs and commenced crying." Mrs.
Swift testified that she immediately ran through the
house and called to the prosecutrix two or three times,
and that her daughter answered her from the head of
the stairs, having just come out of the dining-room
where the defendant was. This witness testified that
her daughter "was badly scared and crying," and told
her "that the man had put his fingers away up, and she
showed me where." Both Mrs. Swift and Mrs. Kelso
testified that the defendant "was very nervous, white-
looking, scared and trembling all over," and when ac-
cused by Mrs. Kelso of having abused the prosecutrix,
the defendant replied, "Just wait a minute, Jessie, just
wait a minute, let me explain." The defendant was
forced out of the house by Mrs. Kelso and Mrs. Swift,
Mrs. Kelso following him out onto the sidewalk where
he was arrested by a police officer and taken to the po-
lice station. At the police station a vaseline bottle,
containing a small amount of vaseline and a pocket
knife were found upon the person of the defendant. An
examination of the prosecutrix disclosed that her pri-
vate parts were lacerted, blood flowing from them and
that her underwear was bloody. It was also shown that
the underwear of Ethel Kelso had traces of vaseline on
it, and that vaseline was discernible on the skin of the
Kelso child around and near the private parts.

The mother of the prosecutrix testified that be-
tween two and three o'clock in the afternoon of the
commission of this offense she had given the prosecu-
trix a bath and dressed her, putting on clean under-
wear.

Mr. Kelso testified that shortly after dinner he
went to sleep on the bed in the dining-room; that his

wife was down stairs with Mrs. Swift; that he was asleep about a half or three-quarters of an hour; that he was awakened by his little girl; that she was pale and said "that she was hurt; she said that he tried to hurt her."

The defendant objected to the introduction of the testimony of Eunice Swift, the prosecutrix, on the ground that she was incompetent as a witness on account of her youth. The record discloses that before this witness was permitted to testify the learned trial judge examined her thoroughly touching her competency as a witness, and after such examination overruled defendant's objection, to which he excepted. While the record disclosing the testimony of this witness shows some childlike misstatements or discrepancies as to the exact time of the day of this occurrence, her evidence touching the commission of this offense shows that she was an intelligent child for her age. Among other questions propounded to this witness and her answers thereto, were the following: "Q. Do you know Walter Headley? A. Yes, sir. Q. Did you ever see him before? A. No, I saw him once. Q. You saw him once? A. Yes, sir. Q. What did he do to you? A. He take something out of his pocket and put it away up. Q. Away up? A. Away up here. (Indicating.) Q. Under your clothing? A. Yes, sir. Q. How many times did he put his hands away up there? A. Four times. (Indicating with fingers.) Q. How many is that? A. That is four. Q. Where was he when he did this? A. He was right in the bed room where Mr. Kelso was sleeping—where Mr. Kelso was lying down. Q. Who was sleeping? A. Mr. Kelso. Q. Where was he sleeping? A. On the bed. Q. Was he asleep? A. Yes."

This witness then testified that Ethel Kelso was in the room; that Ethel tried to and did get away from defendant and then went down stairs. Q. Then where did you go? A. He just went up there. Q. Did you

see your mamma? A. Yes, sir. Q. When did she go up there? A. Her never come up there; her called me. Q. What did you do when she called you? A. I got away, I got to the stairs. Q. You went to the stairs? A. Yes, sir. Q. Then what did you do? A. I go down stairs. Q. Did you have on your panties? A. Yes, sir. Q. Where did this man put his hand? A. His fingers away up there. (Indicating under her skirt.) Q. On which side of your panties, the outside or the inside? A. Outside. Q. What was it that he had on his hands? A. Salve. Q. Where did he get it? A. Upstairs on Mrs. Kelso's dresser.''

On cross-examination this witness stated that after dinner she was cleaned up and went upstairs; that the first time she saw the defendant that day he was sitting at the table eating; that she and Ethel Kelso were sitting on the defendant's knees, and that he was bouncing them up and down. She again stated that defendant took salve out of his pocket and stuck his fingers away up under her dress, and that when he did this she said to him ''let me alone;'' that she remained there awhile longer and that he again punched her away up on her leg, and that it hurt her.

The testimony of Ethel Kelso, the little playmate of the prosecutrix, was a corroboration of that given by the prosecutrix. She testified that the defendant called to her to get on his lap, and that when she did so he put the prosecutrix down and taking a bottle of vaseline out of his pocket, dropped some of it on his fingers, raised her dress and stuck his fingers under her clothing. She testified that she did not see what the defendant did to the prosecutrix; she stated that after the defendant put her down she ran down stairs and told her mother what defendant had done. To this statement of the witness, as to what she told her mother, defendant saved exceptions.

Dr. C. J. Gilman testified that about six o'clock on the evening of July 4th, 1908, he was called to the

home of the prosecutrix and there examined her; that he found the little girl bleeding a good deal from her private parts, and that in making his examination he removed her underwear, which he had in his possession at the trial; that her underwear was wet with blood when he removed it. He testified that the upper or outer part of her privates were torn, perhaps a quarter to a half inch; that "the private part was ruffled, small ruffles, like pin scratches all around, and the hemorrhage was very profuse, it was bleeding." In describing this tear in her private parts, he said: "Well, it was about a quarter of an inch deep—it would be hard to describe it. It was somewhat of the shape of the privates; the tear was in the upper part. Say this was the upper part, where it was torn, it was torn about a quarter of an inch deep and about three quarters of an inch long—three quarters of an inch long. There were numerous tears and scratches around in here in the vagina. Q. Doctor, had the privates been entered, any penetration there? A. It would be impossible to penetrate very deep, not over half an inch. Q. Had there been any penetration from your examination? A. I could'nt determine that. Q. Doctor, from your experience as a physician what would you say was the cause of this tear and this bloody condition that you found there? A. From external violence. Q. From some external violence? A. Yes, sir. Q. Such as what? A. He might do it with the finger. It could be torn with a finger. Q. In order to make a tear of that kind it would be necessary to have some penetration? A. There would be some penetration. Q. It would have to be the application of some force to the privates? A. Yes, sir." This witness further stated that he determined at the time that the scratches were made by the stretching of the parts. He also stated that he examined the Kelso child on that occasion and that he found her underwear was greasy; "it seems to me that there was vaseline on her underwear." On cross-examination Dr. Gilman testified that

he could not say that the injuries were done by the human finger; but that "it wasn't done by any sharp instrument; it wasn't cut, it was torn."

The defendant testified in his own behalf; he stated that he was a single man, and denied that he made an assault upon or abused the prosecutrix. He testified that after arriving at the Kelso home on the 4th of July they had three cans of beer, two before and one after dinner; that after dinner Mrs. Kelso cleaned off the table and that he went down and got the last can of beer, which he and Kelso drank; that Kelso then laid down on the bed with a paper in his hand; that Kelso and he were talking; that the last he saw of Mrs. Kelso she was in the kitchen; he did not know she had gone down stairs; that Kelso was on the bed five or ten minutes; that while Kelso was on the bed these two little girls, the prosecutrix and Ethel Kelso, came in, and that he took them up astride of his knee, "holding their hands and jumping them up together, then one at a time, just laughing and having a good time," and continued this for five or ten minutes, when Ethel began crying, saying that this jarring hurt her in some way, and that he let her down, and she left the room; that the prosecutrix then began to cry and that he put her down; that Kelso was sitting on the side of the bed at that time and that he got up, picked up his hat, making the remark that "it was time to take another drink," and said, "Come on, Bod," and started out of the room, thinking Kelso was following him, when he was met by Mrs. Kelso and Mrs. Swift, who accused him of having abused the children; that he demanded an explanation, addressing Mrs. Kelso saying, "What is the matter, Jessie, what is the matter, Jessie?" but that they would not explain, but ordered him out of the house. Defendant further testified that Kelso was awake while the little girls were sitting on his knee. As explanatory of his possession of the bottle of vaseline which was found in his pocket when arrested, de-

fendant stated that in his work as fireman, his feet were
frequently scalded, and that he used vaseline on them
for relief; that he had used vaseline for that purpose
for four or five years; had used it that morning, and
after using it screwed the top on the bottle and placed
it in his pocket, for the purpose of taking it to his place
of employment, and that when arrested he discovered
that almost all of the contents of the bottle had been
spilled in his pocket, and that he called the attention of
the police officer to it .

The mother of defendant testified that the defend-
ant had been annoyed by his feet perspiring, and that
he had used vaseline on them for relief a number of
years.

Defendant also offered testimony tending to show
that his reputation for morality in the community in
which he resided, was good.

In rebuttal the State recalled the police officer who
searched defendant immediately after his arrest.    He
testified that in taking the bottle of vaseline from the
person of defendant he placed his hand in defendant's
pocket; that the lid was on the bottle and that he did
not notice any vaseline on the person or clothes of de-
fendant.    The testimony of Mrs. Swift, the mother of
prosecutrix, on this point, was in corroboration of that
given by the police officer.

At the close of the evidence the court instructed the
jury upon every phase of the case to which the testi-
mony was applicable.    The cause was submitted to the
jury and they returned their verdict finding the defend-
ant guilty of an assault to ravish and assessed his pun-
ishment at imprisonment in the state penitentiary for
a term of four years.    Timely motions for new trial
and in arrest of judgment were filed and by the court
taken up and overruled.    Sentence and judgment were
entered of record in conformity to the verdict, and
from such judgment the defendant prosecuted this ap-
peal, and the record is now before us for consideration.

## OPINION.

The complaints of error on the part of counsel for appellant, as indicated by their briefs now before us, may thus be briefly stated:

First: The court erred in giving instructions No. 1 and No. 5.

Second: The court erred in admitting the evidence of Eunice Swift and Ethel Kelso for the reason that they were so young that they did not know the nature and obligation of an oath.

Third: The court erred in failing to instruct the jury on common assault alone.

### I.

Directing our attention to the complaints of appellant as to instructions numbered 1 and 5, it is well to reproduce those instructions. They were as follows:

"1. The court instructs the jury that if they find and believe from the evidence that at the county of Jackson and State of Missouri, at any time within three years next before the 5th day of August, 1908, the date of the filing of the information in this case, the defendant, Walter Headley, in and upon one Eunice Swift, feloniously and unlawfully did make an assault with the felonious intent then and her the said Eunice Swift, then and there unlawfully and feloniously to ravish and carnally know and abuse, and that she the said Eunice Swift, was then and there a female child under the age of fourteen years, to-wit, of the age of five years, then you will find the defendant guilty of assault with intent to ravish, and assess his punishment at imprisonment in the state penitentiary for a term of not less than two years and not more than five years, or by imprisonment in the county jail not less than six months nor more than twelve months, or by a fine not less than one hundred dollars and imprisonment in the county jail not less than three months nor more than

twelve months, or by a fine not less than one hundred dollars.

"Feloniously, as used in these instructions, means wickedly and against the admonition of the law; that is, wickedly and unlawfully.

"5. You are instructed that in order to convict the defendant of the charge of rape, as stated in the information, it must have been shown by the evidence that there was actual penetration of the female organ of the prosecutrix by the male organ of the accused, and as there has been no testimony introduced tending to prove such penetration, you cannot convict defendant of rape, but only of assault with intent to ravish, as elsewhere defined in these instructions."

It is sufficient to say of those instructions that as applicable to the facts developed upon the trial of this cause they clearly and correctly presented the law. Instruction numbered 1 was an instruction which has frequently met the approval of this court, requiring the jury to find every essential element of the offense of an assault with intent to ravish in order to warrant the conviction of the defendant of that grade of crime. The trial court, in our opinion, correctly reached the conclusion, upon the facts developed upon the trial, that the evidence was insufficient to justify a conviction of rape, for the reason that the proof failed to show penetration; therefore by instruction number 5 the court very properly informed the jury of this failure of proof as to the offense of rape, but that the defendant might be convicted of an assault with intent to ravish, as elsewhere defined in these instructions.

## II.

It is insisted by learned counsel for appellant that the court erred in admitting the evidence of Eunice Swift and Ethel Kelso for the reason that they were so young that they did not know the nature and obligation of an oath. Upon that proposition the record discloses

that before the prosecuting witness, who was something over five years old, and the witness Ethel Kelso, who was seven years old, were permitted to testify the learned trial judge examined them thoroughly touching their capacity to testify and their competency as witnesses. After making such examination the court ruled that they were competent, and overruled defendant's objection and permitted the witnesses to testify. The second subdivision of section 4659, Revised Statutes of 1899, makes this provision, as applicable to this subject: ''A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly,'' is incompetent. This proposition is not one of first impression presented to this court, but this identical question was sharply presented to this court in State v. Nelson, 132 Mo. 184, and in the treatment of the proposition in that case, it was said: ''It is not unusual to receive the testimony of children under nine, and sometimes under seven, years of age if they appear to be of sufficient understanding; and it has been admitted even at the age of five years. [1 Greenleaf Ev. (14 Ed.), sec. 367.] Indeed, there is no precise age at which children are competent or incompetent. Their competency is to be determined by their apparent capacity. It belongs to the judge in each case to determine by appropriate questions the competency of the infant offered as a witness, and his decision is not open to review unless there be a clear abuse of judicial discretion, or the witness be admitted or rejected upon an erroneous view of a legal principle. [3 Rice Ev., p. 289, et seq. See, also, State v. Scanlan, 58 Mo. 204; State v. Doyle, 107 Mo. 42.]'' That case, in our opinion, announces the true and correct rule as applicable to the subject now under consideration, and it is only necessary to state in the determination of the question now under consideration, that we have examined the disclosures of the record

concerning the examination of these two children before they testified in the cause, and have considered in detail their testimony as given, and we are unwilling to say, after a careful review of such record, that there was an abuse by the trial court of the judicial discretion in permitting the two little girls to testify.

## III.

The final contention of learned counsel for appellant is that the court committed error in failing to instruct the jury on common assault alone. Upon that proposition we shall be content with pointing to the evidence as disclosed by the record, and which is fully herein indicated by the statement in the case, and in our opinion, if the defendant was guilty of any offense at all, it was that of which he was convicted, and under the evidence in this cause he is in no position to suggest that the court should have submitted to the jury a lower grade of crime than the one of which he was convicted.

Recurring to the testimony, it is true that there was some conflict; however, the conflict was principally between the testimony of the defendant and the two little girls and their mothers, and as has repeatedly been ruled by this court, it was the province of the jury to settle all the conflicts in the testimony. That the record now before us discloses substantial testimony tending to establish the guilt of this defendant of an assault with the specific intent to ravish, is, in our opinion, too plain for discussion. If the jury believed the testimony as introduced by the State it furnished ample support for the verdict returned in this cause. There was no error in the action of the court declining to instruct the jury upon common assault.

We have given expression to our views upon the propositions to which our attention was directed in the brief of counsel for the appellant, and finding no substantial error which would warrant the reversal of

this cause, it results that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.