STATE OF MISSOURI, Respondent, v. BURLIE JONES, Appellant, No. 41778—230 S. W. (2d) 678.

Division Two, June 13, 1950.

724

John M. Belisle, Morran D. Harris and Lee E. Crook for appellant.

J. E. Taylor, Attorney General, and Frank W. Hayes, Assistant Attorney General, for respondent.

TIPTON, J.—In the circuit court of St. Clair County, Missouri, the appellant was convicted of decoying and enticing Loretta

Bernice Webb, a female child under the age of twelve years, to-wit, five years and four months, with the felonious intent to detain or conceal the child from her parent, Mrs. Nellie Webb. The jury assessed his punishment at two years' imprisonment in the penitentiary. Judgment and sentence were pronounced upon appellant in accordance with the verdict.

The evidence on behalf of the State was as follows: Nellie Webb was a widow and she lived in Osceola, Missouri. She had a child by the name of Loretta Bernice Webb, also called Sallie, who was past five years of age. On the night of August 21, 1948, there was a carnival in Osceola on the north side of the square. Mrs. Webb, three children and James Lonnie Loman had been to a picture show. The show was out about 11 o'clock and Mrs. Webb left the children, Sallie, Barbara Fenter and Kenneth Jerry Webb, in cusody of Loman while she went to Brown's cafe to relieve her daughter who was working there so she could take the children home and get some rest. When Mrs. Webb left Loman and the children they were in front of Sunderwirth's Store. Sallie Webb and Barbara Fenter left Loman and went across the street to get a drink at the water fountain. Loman and the little boy remained in front of Sunderwirth's Store. In a short time Barbara came back without Sallie and the officers were notified of Sallie's disappearance.

When Logan Berry, the sheriff, received notice that Sallie Webb had disappeared he started a search for her with Ray Pace, the city marshal. He and Pace were in a car and Pete Bell, a special policeman, walked down the sidewalk. They went over by the Baptist Church where they found the appellant's truck parked and saw Sallie Webb jump out of the truck. As we understand the record, the Baptist Church is located a block down the street from the water fountain and a block west of the public square. They found the appellant sitting in the truck and took him into custody. He told the officers that he found Sallie in his truck and told her to get out. The officers turned Sallie over to her older sister. Loman testified that the child was found within six or seven minutes after she left him to go to the water fountain.

This is all the testimony offered by the State except that of Sallie Webb. The ■■■ appellant contends that her testimony is incompetent on account of her age.

For the purpose of qualification she testified that she remembered the night of the carnival, that she knew what it was to tell the truth and that she must not tell a lie.

She further testified as follows:

"Q. Now, when you are sworn that way, in other words, when you take an oath like that, do you know what happens if you don't tell the truth?

"A. No.

"Q. Where do little girls go that don't tell the truth?

"A. Well, some of them go to jail.

"Q. So when you take an oath, then, do you understand that you have to tell the truth?

"A. Yes.

"Q. And if you tell any lies you go to jail?

"A. Yes.

"Q. You understand that, do you?

"A. Yes."

But on cross-examination she testified:

"Q. What day in April is your birthday?

"A. I don't know, but my mamma knows.'

"Q. You don't understand, do you, Sallie, what an oath means, do you? When somebody says you take an oath, you don't know what that means, do you?

"A. No.

"Q. You don't go to school, do you?

"A. No.

"Q. You don't go to school?

"A. No.

"Q. Can you read or write?

"A. Well—

"Q. Do you study any at home any? Can you read or write that you have learned at home?

"A. No."

After the court had ruled that she was qualified to be a witness, she testified that she and Barbara Fenter went to get a drink over at the water fountain by the bank; that the appellant gave her some gum which she threw away; that the appellant took hold of her hand and led her down to his truck and lifted her up into the truck; that he put his hand on her dress; and that appellant told her to get out of the truck and that she jumped out of the truck at the time the sheriff's car was coming down the street. On cross-examination she repeatedly testified as follows:

"Q. And he took you by the hand, took you back over to Knight's Store, is that right?

"A. No, he leaded me past Knight's Store.

"Q. Where is Knight's Store?

"A. It is over here on the corner.

"Q. That is where you started from, wasn't it, right over there?

"A. That is where we started from to go get a drink.

"Q. And he took you back over on the corner there, led you by the hand?

"A. Well, Burlie Jones and me pretty near went past Knight's Store to go down to the truck."

There was testimony that Knight's Drug Store and Sunderwirth's Store were on the same corner.

At common law there was no presumption that an infant under the age of fourteen years had sufficient intelligence, discretion and understanding to testify as a witness, and the party offering an infant under fourteen years of age had the burden of proving capacity and, therefore, competency, before such witness was allowed to testify. Section 1895, R. S. Mo., 1939, Mo. R. S. A. 1895, has lowered that age to ten years, leaving the common law rule in force as to those under ten years of age. State v. Anderson, 252 Mo. 83, 158 S. W. 817. The statute reads: "The following persons shall be incompetent to testify: * * * a child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly * * *."

There is no precise age at which a child can be considered competent or incompetent. In each case the trial judge is to determine by appropriate questions the competency of the child offered as a witness, and his decision can only be set aside where he has abused his judicial discretion. State v. Headley, 224 Mo. 177, 123 S. W. 577.

"The test of competency of a child of tender years involves four fundamental elements, all of which should be present in order for such child to be competent to testify, viz.: (1) 'Present understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity at the time of the occurrence in question truly to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity truly to translate into words the memory of such observation.' 5 Jones' Commentaries on Evidence, § 2106, p. 3954." Burnham v. Chicago Great Western R. Co., 340 Mo. 25, 100 S. W. 2d 858, l. c. 862.

We think in this case the trial court abused his sound discretion when he permitted Sallie Webb to testify. It is true that this witness said she knew what it was to tell the truth, and that when a little girl takes an oath and does not tell the truth that "some of them go to jail." Yet there is no showing that she knew what a jail was. Moreover, on cross-examination she stated that she did not know what an oath means. She said she had not been to school and could not read or write. When she testified as to what the appellant did, she repeatedly stated that he took her by the hand at the water fountain and lead her past Knight's Drug Store. If this is true, then she was taken past the corner where Loman and the other children were waiting for her and yet was not seen by any of them, nor did she say she saw any of them. As already stated, Knight's Drug Store adjoins Sunderwirth's Store. Therefore, she would have had to pass Loman and the other children before she was led to the truck which was parked near the Baptist Church. The water fountain is between Sunderwirth's Store

and the street corner where the Baptist Church is located. So it is very evident that this witness appears incapable of having just impressions of the facts respecting which she was examined or of relating them truly; therefore, the trial court abused its discretion in permitting her testimony to go before the jury. Section 1895, supra.

It follows from what we have said that the judgment of the trial court must be reversed and remanded for a new trial. It is so ordered. All concur.