**STATE of Missouri, Respondent,**

v.

**Nay GROVES, Appellant.**

**No. 45346.**

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Robert A. McIlrath, Flat River, for appellant.

John M. Dalton, Atty. Gen., W. H. Bates, Sp. Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Presiding Judge.

Defendant has appealed from a sentence of imprisonment in the State Penitentiary for a term of five years imposed upon him pursuant to a jury verdict finding him guilty of assault with intent to rape a female child aged six years and five months. He urges reversal of the judgment on grounds no submissible case was made, error in permitting the child to testify, error in overruling objections made to allegedly prejudicial statements of the prosecuting attorney during the course of the trial and in final argument and the refusal of motions for mistrial based thereon.

The child's mother, separated from her husband, was employed in a tavern operated by a married couple near the city limits of Desloge. She was furnished a room in living quarters attached to the tavern, in which quarters the operators of the tavern also resided. Her four small children, including the child here involved, were maintained at the home of a neighboring couple situate about "a half of a lot" from the tavern, for which the mother paid the sum of $20 per week. The lady of that home was defendant's sister. Defendant spent considerable time in his sister's home and in the summertime frequently slept on a pallet in the yard. He was or had been married, was the father of children by such marriage, but was separated from his wife.

The child's mother testified: After finishing her work in the tavern at about 1:30 a. m., on July 12, 1954, she retired to her bedroom attached to the tavern. Sometime thereafter she was awakened by a scream. She went to the bedroom of the wife of the tavernkeeper, awakened her and then went to the home where her children were housed. After going to two of the doors, she heard a noise from the yard and heard defendant say, "Sssh, lay down there and be quiet." She stepped from the porch and called defendant's name and saw defendant out in the yard about five steps from the porch. He removed himself from the position of being on his hands and knees, with the child underneath him, rolled upon his stomach and remained in that position. She called to the child and asked her what was wrong and at that time saw that the child's pants were down to her ankles. The child said, "He is trying to do something to me." The mother then went into the home where her children stayed, told defendant's sister about the matter and took all of the children back to her bedroom at the tavern. When daylight (rising time) came, she called the sheriff and that afternoon took the child to Dr. Gaebe, who examined her genitals.

Dr. Gaebe testified that he found a slight redness of the vulva and irritation; that the hymen was intact, there was no bleeding and no "apparent penetration"; and that the irritation could have been caused by any number of things, including a man's privates.

When the child, aged seven years and seven months at trial time, was called to the witness stand by the State, defendant objected to her testifying on the ground of incompetency due to her immaturity. The jury was excluded and she was interrogated by the Prosecuting Attorney, the Judge and counsel for defendant. In reply to their questions, she stated she was then seven years of age, in the second grade at school and gave the name of her teacher; that she had attended Sunday School and had been there taught that little girls who

did not tell the truth would be punished; that she knew what happened to little girls when they do not tell the truth, "they go down there", pointing downward toward the floor; that she means they would be punished by the devil "underground"; that she remembered what happened to her several months ago when a man took her "outside"; that she could tell what happened and would tell the truth. The court held her to be a competent witness. Upon return of the jury she again testified substantially as she had testified out of their presence, and then as follows: When she was taken "outside" on the night in question, she was sleeping alone in her own bed in "Jimmie's house" (meaning, apparently, the home of defendant's sister and her husband). Defendant (whom she pointed out in the courtroom) came into the room, took her outside, put her on a blanket, pulled her pants down, got on top of her and put his "privates to [her] privates". He also told her to "shut up" and pulled the blanket over her head, but she "just kept hollering" and he slapped her.

Defendant's evidence was that he never at any time molested or attempted to molest the child; that as he slept in the yard on the night in question an automobile in an adjacent driveway awakened him, leaving him restless; that he heard the child crying and saw her start out toward the highway; that he "got her back and told her to go back into the house"; that she went in the direction of the house and he returned to his pallet and went to sleep; that if her mother came over there and said anything to him, he did not hear it; that he never told anyone he got the child out of her bed and brought her outside because it was hot that night; and that he never told anyone she was on the pallet with him that night. On cross-examination he admitted he had been sentenced to imprisonment in the City Workhouse of the City of St. Louis for a term of one year for "non-support" and had been convicted of petit larceny.

In rebuttal, the sheriff and another testified that defendant told them the child was on the pallet with him that night, but that he did nothing to her that was wrong.

■ In determining the sufficiency of the testimony to support the verdict, we review the evidence from the standpoint most favorable to the State. The recital of the State's evidence, even if the child's testimony be excluded, shows its sufficiency. The testimony of the mother, if believed by the jury, justified a finding that she discovered defendant engaged in the physical act of attempting to effect sexual connection with the child and that he was in a position to accomplish his purpose. Certainly, the jury could also infer that in taking the position in which he was discovered defendant was animated by a desire for sexual connection and that in seeking to satisfy such desire he intended to effect penetration. State v. Pinkard, .318 Mo. 751, 300 S.W. 748, 751. See also State v. Matsinger, Mo.Sup., 180 S.W. 856. But, of course, the competency of the child as a witness must be determined. If she was not a competent witness, then her testimony would be so obviously prejudicial as to require reversal of the judgment and remand of the case.

■ There is no precise age at which a child can be considered as a competent witness. The statute, Section 491.060 RSMo 1949, V.A.M.S., precludes any presumption that an infant under the age of ten years is capable of receiving just impressions of facts or of relating them truly and it is the duty of the trial court in each case to determine whether such child is competent before permitting it to testify. The decision of the trial judge, when based on sufficient examination and observation of the child as to its competency, can only be set aside where he has abused his discretion. State v. Headley, 224 Mo. 177, 123 S.W. 577, 581; State v. Hubbard, Mo.Sup., 295 S.W. 788, 791; State v. Jones, 360 Mo. 723, 230 S.W.2d 678, 680; State v. Tillett, Mo.Sup., 233 S.W.2d 690, 692.

■ The record shows that when the child was interrogated on voir dire examination and later in the presence of the jury she gave straightforward, responsive answers to each and every question asked her, which answers, on their face, tended to evince her competency, measured by standards approved by this court. See State v. Jones, supra; State v. Tillett, supra. The trial court, who heard her answers and observed her demeanor, found her to be competent. Defendant has pointed to no inconsistency or evidence of lack of her intellectual or moral qualifications. He does say, erroneously, that "her stating that he placed his privates *in* hers could not have been true and showed that [she] had been coached and was not testifying upon things that she actually knew." She did not so state. Her testimony was that defendant put his privates *to* her privates. Neither can defendant's contention that her use of the word "privates" necessarily shows undue "coaching" of her as a witness. It may be that the term "privates" had been suggested to her as a more genteel and accurate term than a child of her years and environment otherwise would use. See State v. Burkhart, Mo.Sup., 242 S.W.2d 12, 14[5]. The trial court did not abuse its discretion in permitting the child to testify.

During the closing argument of the Prosecuting Attorney, he related the substance of the child's testimony and then declaimed: "You heard that little girl testify to that. And, gentlemen of the jury, if there was ever a person that took the stand and told the truth there, I would stake my life that that little girl was telling the truth when she told you gentlemen what happened out there that day." Defendant's counsel objected and moved for discharge of the jury on the ground that such argument was improper, which objection and motion the trial court overruled.

■ The law is well settled that the prosecuting attorney may not express his private opinion or knowledge of a defendant's guilt but where it is apparent that his opinion is based solely on the evidence in the case he may properly argue that, in his opinion, defendant is guilty. State v. Vinson, Mo.Sup., 107 S.W.2d 16, 18; State v. Myers, 354 Mo. 277, 189 S.W.2d 279, 281. However, he should not urge the jury to accept his belief in the guilt of the defendant and to predicate a verdict thereon in lieu of its independent finding of the fact. State v. Cole, Mo.Sup., 252 S.W. 698, 701. In that case, the State's attorney declared in his closing argument: " 'I am as satisfied that this defendant Cole killed Charley Reading as that I am standing here before you, gentlemen, this evening.' " Division Two of this court, with one member dissenting, held such a statement to be prejudicially erroneous, on the ground that such a statement, coming from one learned in the law and a representative of the State, was calculated to weigh heavily with the jury and that counsel should not be permitted to throw the weight of his personal or professional beliefs into the scales against the accused. In the instant case, it may be (the Attorney General's brief so urges) that the Prosecuting Attorney was basing his conclusion solely on the testimony and demeanor of the child on the witness stand. But it is difficult to escape the conclusion that he was also endeavoring by means of a dramatic pronouncement of his profound, death-defying belief of defendant's guilt to set at rest any doubt of defendant's guilt that might remain in the mind of any juror. Inasmuch as the judgment must be reversed on other grounds, we need not here determine whether the above statement, standing alone, constituted reversible error, but it was improper.

The Prosecuting Attorney also stated in his closing argument: "Send this man to five years in the Pen. Don't let him out running around the streets 'cause if any of you have any daughters and if this defendant ever got the opportunity your daughter could be the next one, or your grandchild or something." Defendant ob-

jected on the ground the statement was prejudicial and asked that the jury be admonished to disregard it and that the jury be discharged, which objection, request and motion the court overruled. The jury assessed the punishment suggested by the prosecutor.

■ The prosecuting attorney has the right and it is his duty to prosecute with vigor those cases wherein the evidence warrants him in so doing, as did the evidence in this case. And, in so doing, he properly may call the attention of the jury to the prevalence of crime, if such be the commonly known fact, the necessity of convicting those proved guilty of crime and the evil results that will flow to society from a failure of the jury to do its duty. But it is a different thing if the prosecuting attorney seeks by inflammatory appeals to arouse personal hostility of the jurors toward the defendant, especially by implanting fear in them that acquittal of defendant will endanger their own safety or the safety of some member of their family. See State v. Tiedt, 357 Mo. 115, 206 S.W. 2d 524, 526–528.

■ The loathsomeness of the crime here charged has a tendency to engender prejudice against its alleged perpetrator. That well-known fact places upon the State's attorney a duty to conduct the trial with the utmost fairness and scrupulously to avoid injecting into the minds of the jurors prejudicially incompetent matters that will further inflame them. State v. Matsinger, ·Mo.Sup., 180 S.W. 856, 857. The argument made in the instant case was a direct effort to bring home to each juror (who had a daughter or granddaughter— and we may safely presume some did) the fear that if defendant be permitted to remain at large he might rape the daughter or granddaughter of that juror. Once such a fear entered the mind of a juror, he would find it difficult to consider his verdict with the objectivity required of an impartial juror. When the natural and probable consequence of such an appeal is

apparent, as we think it is in this case, we must and do hold that the argument was prejudicial to the right of the defendant to a fair and impartial trial. State v. Allen, 363 Mo. 467, 251 S.W.2d 659, 662–663.

Other assignments of alleged misconduct and improper statements of the prosecuting attorney occurred under circumstances not likely to arise in another trial and need not be considered.

For the error in permitting the aforesaid argument, the judgment is reversed and the cause remanded.

All concur.