**Daniel O. JONES, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 65631.**

Missouri Court of Appeals, Western District.

Aug. 1, 2006.

Jeannie M. Willibey, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and ROBERT G. ULRICH, JJ.

ROBERT G. ULRICH, Judge.

Daniel Jones appeals from the judgment of the motion court denying his Rule 29.15 motion for postconviction relief without an evidentiary hearing. Mr. Jones sought to vacate his convictions for murder in the first degree, section 565.020, RSMo 2000, and armed criminal action, section 571.015, RSMo 2000, and sentences of life imprisonment without parole and thirty years imprisonment, respectively. Mr. Jones claims that the motion court erred in denying his Rule 29.15 motion because he was denied effective assistance of counsel when counsel failed to object to the prosecutor's opening statement and certain comments made to the venire panel and failed to seek to admit the out-of-court statements of the victim's three-year old daughter to a detective and an emergency medical techni-

cian (EMT). The judgment of the motion court is affirmed.

## Facts[1]

On the afternoon of March 6, 2001, Candriea White's neighbor saw that Ms. White's door was half-way open and that Ms. White's three-year-old daughter, Raykell, was standing in the hallway of the White apartment just inside the foyer of the front door. The neighbor summoned the police, who found Ms. White on the floor of her apartment with multiple cuts and stab wounds. During their investigation, the police discovered bloody finger and palm prints on the wall of Ms. White's living room. These prints matched Mr. Jones' left ring finger and his right palm, respectively. The police determined that Ms. White had been killed sometime between 12:30 p.m. and 4:17 p.m. that day.

After executing a search warrant at Mr. Jones' residence the next day, the police arrested him. During questioning, Mr. Jones denied knowing Ms. White. Initially, he also denied ever being at Ms. White's apartment complex, but later admitted that he had been to the apartment complex a couple of years earlier. He denied ever being in Ms. White's apartment, however. While Mr. Jones initially agreed to tell the police about his activities on the day that he was arrested, he refused to discuss his activities on the preceding day, telling the police, "Well, we're not going to discuss this and it's none of your business where I was at." He maintained that he was innocent and told the police, "You have the wrong guy."

Mr. Jones did not testify at trial. He did present the testimony of two alibi witnesses, however: Tiffany Hill, his half-sister, and Antwan Johnson, his half-sister's cousin. Mr. Johnson testified that he saw Mr. Jones on March 6, 2001, at about 2:00 p.m. for "about an hour or 45 minutes, if that." Ms. Hill initially testified that Mr. Jones was at her home from 12:15 p.m. until about 4:00 p.m. that day, although she later admitted that she was not home during that entire time and that she did not know what Mr. Jones was doing while she was in her bedroom.

Three-year-old Raykell witnessed her mother's murder. She did not testify at trial, however, because the trial court had previously concluded that she was incompetent to testify based upon her responses to questions during a competency hearing.

The jury found Mr. Jones guilty of murder in the first degree and armed criminal action. The trial court sentenced him to life imprisonment without parole and thirty years imprisonment. Mr. Jones' convictions and sentences were affirmed in his direct appeal, *State v. Jones*, 140 S.W.3d 618 (Mo.App. W.D.2004).

Thereafter, Mr. Jones filed his *pro se* Rule 29.15 motion for postconviction relief. Appointed counsel filed an amended motion on Mr. Jones' behalf raising claims of ineffective assistance of trial counsel. The motion court denied Mr. Jones' motion without an evidentiary hearing. This appeal followed.

## Points on Appeal

Mr. Jones raises three points on appeal. He claims that the motion court erred in denying his postconviction relief motion because he was denied effective assistance of counsel when counsel failed to (1) re-

---

1. Because the standard under which this court views the facts is the same as for a direct appeal, the facts of the direct appeal as set out in the unpublished memorandum that accompanied the order affirming the convic- tions and sentences, *State v. Jones*, 140 S.W.3d 618 (Mo.App. W.D.2004), are repeated here without quotation marks with minor changes. Procedural developments since the direct appeal are also added.

quest a mistrial or object and seek a curative instruction during the prosecutor's opening statement, (2) object to certain comments made by the prosecutor to the venire panel, and (3) seek to admit the out-of-court statements of the victim's three-year old daughter to a detective and an EMT pursuant to the excited utterance exception to the hearsay rule.

### Standard of Review

Appellate review of the denial of a postconviction motion is limited to determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000), *cert. denied*, 531 U.S. 1171, 121 S.Ct. 1140, 148 L.Ed.2d 1004 (2001). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, an appellate court is left with the definite and firm impression that a mistake has been made. *Morrow*, 21 S.W.3d at 822.

An evidentiary hearing shall not be held if "the motion and files and records of the case conclusively show that the movant is entitled to no relief." Rule 29.15(h). A trial court will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief. *Morrow*, 21 S.W.3d at 822. An evidentiary hearing is required only if (1) the motion alleges facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the files and records in the case; and (3) the matters complained of resulted in prejudice. *Id.* at 822–23.

To obtain an evidentiary hearing for claims related to ineffective assistance of counsel, a movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was prejudiced thereby. *Id.* at 823; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, the facts alleged must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Morrow*, 21 S.W.3d at 823.

### I. Points One and Two

Points one and two on appeal involve ineffective assistance of counsel claims based on counsel's failure to object. In point one, Mr. Jones claims that the motion court erred in denying his Rule 29.15 motion because he was denied effective assistance of counsel when his trial counsel failed to request a mistrial or object and seek a curative instruction during the prosecutor's opening statement. In his motion, Mr. Jones alleged that counsel was ineffective for failing to object after the prosecutor told the jury members in opening statement that they would "be brought face to face with evil" and would "see what a man is capable of, if he has ice water in his veins"; that "this murderer left his mark in a place ... so that we could prove that he was the murderer"; that the identification of Mr. Jones' fingerprint and palm print at the scene constituted evidence that "objectively, scientifically, irrefutable, he did it"; and that at the end of the case, the prosecutor, as an advocate for the citizens of Jackson County "would give up that responsibility and ... turn it over to you and ask you, then, to be the advocate...."

In point two, Mr. Jones claims that the motion court erred in denying his Rule 29.15 motion because he was denied effective assistance of counsel when his trial counsel failed to object to certain comments made by the prosecutor to the veni-

re panel. Specifically, in his motion, Mr. Jones alleged that counsel was ineffective for failing to object when the prosecutor stated that the State's case was "based upon scientific evidence" and fingerprint identification is "what we see in our business as the unique identifying marker left by a sole individual." Mr. Jones argued that the comments during voir dire and opening statement constituted argument, misstated the evidence, referred to matters outside the record, and misstated the jury's role in the case. He also argued that he was prejudiced by counsel's failure to object because the comments predisposed the jury to find him guilty and affected the outcome of the trial resulting in a substantial deprivation of his right to a fair trial.

The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the defendant's right to a fair trial. *Hutchison v. State*, 150 S.W.3d 292, 301 (Mo. banc 2004), *cert. denied,* —— U.S. ——, 126 S.Ct. 72, 163 L.Ed.2d 95 (2005). In asserting ineffective assistance of counsel, a defendant must overcome a strong presumption that counsel's performance was sound trial strategy. *Id.* In many instances, trial counsel does not object to otherwise improper questions or arguments for strategic purposes fearing that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good. *State v. Tokar,* 918 S.W.2d 753, 768 (Mo. banc 1996), *cert. denied,* 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).

"The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury." *State v. Reyes,* 108 S.W.3d 161, 165 (Mo.App. W.D.2003)(quoting *State v. Clark,* 981 S.W.2d 143, 146 (Mo. banc 1998)). Trial courts may exclude questions that misstate the law, arguably seek commitments from the jury panel, or confuse or mislead the venire members. *State v. Timmons,* 956 S.W.2d 277, 282 (Mo.App. W.D.1997). Counsel is not permitted to try the case on voir dire nor is voir dire an appropriate occasion for argument. *Reyes,* 108 S.W.3d at 165 (quoting *State v. Antwine,* 743 S.W.2d 51, 58 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)).

The motion court did not clearly err in denying these claims without an evidentiary hearing because Mr. Jones failed to allege facts showing a reasonable probability that, but for counsel's failure to request a mistrial or object during voir dire and the prosecuting attorney's opening statement, the result of the proceeding would have been different. Even if the comments about which Mr. Jones complains were improper and counsel should have objected to them, which is not decided, counsel's failure to object did not deprive Mr. Jones of his right to a fair trial. The evidence of Mr. Jones' guilt was overwhelming. Mr. Jones' bloody finger and palm prints were found on the wall of Ms. White's apartment, where Ms. White had been repeatedly stabbed, causing substantial bleeding and her death. Moreover, despite the physical evidence, when questioned by police officers Mr. Jones denied knowing Ms. White and denied ever being in her apartment. "Exculpatory statements, when proven false, evidence a consciousness of guilt." *State v. Buchli,* 152 S.W.3d 289, 297 (Mo.App. W.D.2004)(quoting *State v. Clay,* 975 S.W.2d 121, 140 (Mo. banc 1998), *cert. denied,* 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999)). "Guilt may be inferred when an accused attempts to deceive the police, as in making a false exculpatory statement." *Id.* (quoting *State v. Hibbert,* 14 S.W.3d 249, 253 (Mo.App.

2000)). Mr. Jones failed to allege facts showing that he was prejudiced by counsel's failure to object to comments made during voir dire and opening statement. The trial court did not clearly err in denying these claims without an evidentiary hearing. Points one and two are denied.

## II. Point Three

In point three, Mr. Jones claims that the motion court erred in denying his Rule 29.15 motion without an evidentiary hearing because he was denied effective assistance of counsel when counsel failed to seek to admit the out-of-court statements of the victim's three-year old daughter, Raykell, to a detective and an EMT pursuant to the excited utterance exception to the hearsay rule. In his motion, Mr. Jones alleged that the detective would testify at the evidentiary hearing that she arrived at the scene at 6:30 p.m., that she found Raykell at the apartment across the hall, and that she interviewed the child at the police station thereafter. The motion further alleged that Raykell told the detective that Cavion's (her brother's) daddy (Clarence Henderson) got angry, hit her mother, got a knife from a kitchen drawer, and cut her mother's neck. Raykell then identified a photograph of Mr. Henderson as the man who was Cavion's daddy and the person who hurt her mother. The motion also alleged that the EMT would testify at the evidentiary hearing that when she checked on the children after responding to the emergency, Raykell told her that "her daddy" had done it. The motion stated that the EMT was prepared to testify that "[i]t was like [the child] wanted to talk about it. . . . She had seen something horrible and was talking about it. . . ." The motion claimed that at another point, Raykell told the EMT that Cavion's dad did it. The motion further asserted that both the detective and the EMT would testify that Raykell was nervous, scared, excited, and upset during her statements to them and that "she had not been subject to any influences prior to the time that she made the statements and had not had sufficient time for a child of her years to fabricate." Finally, Mr. Jones argued that had the jury heard the daughter's statements to the detective and the EMT that another man was the perpetrator, the jury would have had a reasonable doubt about his guilt.

The essential test for admissibility of an excited utterance is whether it was made under such circumstances as to indicate it is trustworthy. *State v. Strong*, 142 S.W.3d 702, 718 (Mo. banc 2004), *cert. denied*, 543 U.S. 1059, 125 S.Ct. 872, 160 L.Ed.2d 786 (2005)(quoting *State v. Van Orman*, 642 S.W.2d 636, 639 (Mo.1982)). The rationale for this exception to the hearsay rule is that "where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant." *Id.* (quoting *Van Orman*, 642 S.W.2d at 639). "The utterance must be made under the immediate and uncontrolled dominion of the senses and during the time when consideration of self-interest could not have been brought to bear through reflection or premeditation." *State v. Edwards*, 31 S.W.3d 73, 78 (Mo.App. W.D.2000)(quoting *State v. Post*, 901 S.W.2d 231, 234 (Mo.App. E.D. 1995)). The key requirements of the admissibility of an extra-judicial statement as an excited utterance are that the declarant has been subjected to a startling occasion, the statement is made before time to fabricate, and the statement relates to the circumstances of the occurrence. *Van Orman*, 642 S.W.2d at 639. While the time of the utterance need not be strictly contemporaneous with the exciting cause, the utterance may be subsequent to it provid-

ed there has not been time for the exciting influence to "lose its way and to be dissipated." *Id.* (citing 6 WIGMORE, EVIDENCE § 1750 (Chadbourn Rev.1976)).

 The victim's three-year-old daughter did not testify at trial because the trial court had previously concluded that she was incompetent to testify based upon her responses to questions during a competency hearing. Section 491.060, RSMo 2000, identifies persons incompetent to testify. Paragraph (2) states that a child under the age of ten who "appears incapable of receiving just impressions of the facts respecting which the child is examined, or of relating them truly" is incompetent to testify, except when the child is the alleged victim of offenses defined in chapters 565, 566 or 568 RSMo. The test of competency of a child of tender years involves four fundamental elements, all of which should be present in order for such child to be competent to testify: "(1) [p]resent understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity at the time of the occurrence in question truly to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity truly to translate into words the memory of such observation." *State v. Jones,* 360 Mo. 723, 230 S.W.2d 678, 680–81 (1950). The trial judge determined at the hearing that the three-year-old witness did not satisfy the criteria to testify as a witness. A child's competency is within trial court's discretion, and the court's decision will not be reviewed in absence of clear abuse of discretion. *Petty v. Kansas City Pub. Serv. Co.,* 354 Mo. 823, 191 S.W.2d 653, 658 (1945). The court's discretion regarding the competency of the child to testify was not subject to Mr. Jones' postconviction relief motion. Furthermore, the Missouri Supreme Court has held that evidence of spontaneous declaration of a child is admissible despite the incompetency of the child as a witness because "the peculiar nature of the exception render the matter of competency substantially inapplicable." *Van Orman,* 642 S.W.2d at 639. Nevertheless, the child's lack of competency to testify in this case had relevancy to the issue presented—whether Raykell's statements to the detective and the EMT were excited utterances admissible under the exception to the hearsay rule.

As indicated above, excited utterances are admissible if they are trustworthy. *Strong,* 142 S.W.3d at 718. The record in this case refuted Mr. Jones' allegations in his Rule 29.15 motion that three-year-old Raykell's out of court declarations were excited utterances because the statements were not trustworthy. The detective's report indicated that when she spoke to the child for the first time some hours after the event, the child said that she had asked her mother to turn on cartoons after her mother had been killed demonstrating the child's incapacity to understand the event and to observe and mentally record what she had seen. The record further revealed that the detective conducted a video interview with the child several hours after the death of her mother during which the detective asked several questions without understandable audible response from the child. When asked who killed her mother, the child stated, "Kisskey" and when asked again, she said, "Kisset," whom the child identified as "a man." She then said that "Kissick's" son is her younger brother. She later said that her mother's "daddy kill her." She was asked whether "it was her daddy or is it Cavion's daddy?" She responded, "Cavion's daddy." The child said that the man stepped on Cavion's foot. When asked why, she said, "He trying to get a, give a hug." When the detective then asked, "Why'd he

do that?" the child said, "No. My dad gave Cavion a hug like me." These answers are representative of the child's response to the detective's questions. The dialogue reflected the responses of a normal three-year-old child being interviewed by a detective several hours after the incident, having considerable difficulty either understanding or recounting what she saw.

Additionally, the EMT's deposition was taken in anticipation of Mr. Jones' trial and refuted Mr. Jones' motion for postconviction relief. The EMT arrived at the crime scene after being directed to proceed to the scene by radio communication, was informed that the victim was deceased, learned that the victim's two children were at a neighbor's house, and attempted to comfort the three-year-old daughter of the victim. She participated in obtaining food for the children because the three-year-old said she was hungry. She spoke to the child, and the child said that her mother was dead. The EMT asked the child who had done it, referring to the killing of her mother. The child responded, "Her daddy." She said several times that "Her daddy do it." The EMT said that she did not know if the child was referring to her mother when she said "her." She said that the child could have been referring to "the neighbor's dad or the neighbor's child's dad," or someone else. During her discussion with the child, the child also referred to her mother by her first name. The child was not hysterical and was not crying. The EMT could not remember whether the child referred to her brother's father. She testified that she had the "impression that she didn't know the name of the person" who had killed her mother. After being fed, the child played and was more comfortable, the EMT said.

The record refutes Mr. Jones' allegation that the child's answers to questions posed by the detective and the EMT were excited utterances. The child's responses to the questions were unclear and demonstrated that the child did not possess the mental capacity at the time of the occurrence in question to observe and to register such occurrence and a capacity to translate into words the memory of such observation, however short. The trial court determined that the child was incompetent to testify because the requisite criteria were not satisfied. The presumption of section 491.060 is that the child did not possess the capability to be a witness, and the trial court concluded that the presumption was not overcome. Although an excited utterance is not equivalent to testifying in a court proceeding, the two essential qualities referenced are necessarily relevant in this case to both the in court statements and the out of court statements. The child's inability to receive just impressions of the facts and relate them truly made her declarations untrustworthy. Additionally, she was responding to questions of an interviewing law enforcement officer and an EMT considerably after the event for which she was questioned. Her "utterances" were not "statement[s] ... made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, ... expressing the true belief of the declarant." *Van Orman*, 642 S.W.2d at 639. After reviewing the entire record, the motion court's findings of fact and conclusions of law are not clearly erroneous, and this court is not left with the definite and firm impression that a mistake has been made. Point three is denied.

The judgment is affirmed.

HOLLIGER, P.J. and LOWENSTEIN, J. concur.