# THE STATE v. W. E. STEELE, Appellant.

### Division Two, March 15, 1910.

1. **INFORMATION: False Pretense: Bogus Abstract.** The information in this case sufficiently charges that defendant feloniously, designedly and falsely pretended that the abstract of a piece of land which never existed and which was used in the trade, was a true abstract and correctly represented the title.

2. **INSTRUCTIONS: Length.** The length of an instruction will not authorize a reversal, unless it contains objectionable features which of themselves constitute reversible error.

State v. Steele.

3. ———: **Assumption of Fact.** An instruction should not in one part require a jury to find certain things to be true and in another part assume them to be true. It should not require the jury to find that defendant's representations concerning a certain abstract, lands and the pretended owner were false and fraudulent and then further on state that such representations were false and fraudulent.

4. ———: ———: **Confusing.** And if the instruction, in setting out in the words of the information negativing the representations that the abstract and note were genuine, and the owner an actual person, and the land actual land, does so in such a way that it is uncertain whether those negations were stated as facts in the instruction, or were things to be found by the jury, the instruction is so confusing and misleading as to constitute reversible error.

5. **EVIDENCE: Investigation: Correspondence.** An investigation made by correspondence, and the results of it, amount to mere hearsay. The testimony of a witness that she sent the abstract which defendant represented to be an original genuine abstract, to the abstracters who purported to have made it, and no answer came, and that she then authorized the postoffice authorities to look them up, and they replied there were no such persons, is hearsay and inadmissible.

6. ———: **Cross-Examination.** Great latitude is to be allowed in the cross-examination of witnesses who are interested in the prosecution, or who by testifying are to receive some immunity from criminal charges, or whose testimony materially varies from their testimony on a former trial of the same or a kindred case.

7. ———: **Leading Questions.** The asking of leading questions is a matter largely in the discretion of the trial court, and is no ground for a reversal on appeal unless there is some disclosure showing an abuse of that discretion.

8. **NEWLY DISCOVERED EVIDENCE: No Affidavit.** A new trial cannot be granted on the ground of newly discovered evidence unless there is an affidavit supporting that ground.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw,* Judge.

REVERSED AND REMANDED.

*E. E. Hairgrove* and *Geo. T. Longan* for appellant.

The information does not charge an offense under the statutes. State v. Roberts, 210 Mo. 702; State v. Bradley, 68 Mo. 140; Kelley's Crim. Pr. (2 Ed.), pp. 481 and 169; State v. Janson, 89 Mo. 98; State v. Pickett, 174 Mo. 633; State v. Terley, 142 Mo. 403. Any instruction which contains over 1300 words must of necessity be an instruction that the ordinary jury can not be able to dissect and thoroughly understand. State v. Roberts, 210 Mo. 725. Instruction 1 is entirely too long and complex and is beyond the understanding of the ordinary man. By a careful analysis and a painful dissection the trained mind of a lawyer might digest it, but to the average juror it is misleading, and the negativing portion of it is so connected as to amount to a plain declaration on the part of the court that the abstract of title complained of was a false and fraudulent document. It is conceded to be proper pleading in an indictment or information to charge that the defendant falsely represented the note, the deed of trust and the abstract of title to be true and genuine and to negative these by alleging "whereas in truth and in fact they were false and fraudulent," but you cannot use this negativing language in an instruction without conveying to the minds of the jury the impression that the court is declaring as facts just what is alleged. Especially is this so in a long and complicated instruction like this one. This instruction is at fault again because it nowhere sets out the abstract of title, but in two places refers to the said false writing and token purporting to be an abstract of title "above set out and described" or "as above set forth." State v. Roberts, 201 Mo. 702.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1)   The information is good when measured by the requirements of section 1927, R. S. 1899, and the cases construing that section. State v. Turley, 142 Mo. 406; State v. Feazell, 132 Mo. 178; State v. Alexander, 119 Mo. 448; State v. Dines, 206 Mo. 653; State v. Wilson, 143 Mo. 342; State v. Barbee, 136 Mo. 441. The objections made to the information in the case of State v. Roberts are fully met by the allegations of the information in this case. State v. Roberts, 201 Mo. 710. The information is also good under section 2213, R. S. 1899. State v. Pickett, 174 Mo. 665; State v. Wilson, 223 Mo. 156; State v. Martin, 226 Mo. 538; State v. Porter, 75 Mo. 171.   (2)   The fifth and tenth assignments of the motion for new trial challenge the sufficiency of the evidence. There is no basis in the record for this complaint. State v. Alexander, 119 Mo. 448; State v. Miller, 212 Mo. 78; State v. Roberts, 201 Mo. 726. It is only necessary that there be some substantial evidence. The evidence in this case practically demonstrates appellant's guilt. This court does not disturb verdicts on the ground of the insufficiency of the evidence unless there is "an entire failure of proof, or the evidence is of such flimsy character as to authorize the inference that the verdict was the result of passion, prejudice or mistake." State v. Barton, 214 Mo. 321; State v. McGee, 212 Mo. 100; State v. Lockhart, 188 Mo. 432.   (3)   The first instruction required the jury to find affirmatively every material element of the offense charged in the information before returning a verdict of guilty. This was sufficient. While it is somewhat lengthy, yet so was the devious path which appellant traveled to effect his fraudulent purposes. It met the objections mentioned in State v. Roberts, 201 Mo. 725, and conformed to the standard fixed in State v. Wilson, 223 Mo. 156.

FOX, J.—This cause is now pending in this court upon appeal on the part of the defendant from a judgment of the criminal court of Jackson county, Missouri, convicting him of having by false representations and pretenses obtained from one Phianna Wheaton certain household goods of the value of two hundred and sixty dollars.

The information in this cause is quite voluminous, in fact more so than there was any necessity for. As was said by the representative of the State, the Attorney-General, it resembles greatly a bill in equity in a complicated case; therefore, we shall not burden this opinion with a reproduction of it, but will, during the course of the opinion, make reference to certain portions of it in discussing the challenge on the part of the appellant as to its sufficiency.

The defendant, upon this information, was duly arraigned and entered his plea of not guilty. A jury was duly impaneled and the trial of the cause proceeded. Upon this trial there was a disagreement on the part of the jury and they were discharged. On April 29, 1909, a second jury was duly impaneled and the trial proceeded.

The evidence developed upon the trial tended to prove substantially the following state of facts: That in May, 1908, Mrs. Phianna Wheaton owned and was in possession of the household goods described in the information, having purchased them from a Mrs. Corlew on the 5th day of the month mentioned. Learning that the house she was occupying was to be torn down Mrs. Wheaton told the agent through whom she purchased the goods that she desired to sell them. A short time thereafter this man brought defendant and his co-defendant, Watts, to Mrs. Wheaton's house. Mrs. Wheaton's son and daughter were present at this meeting. Defendant wanted to buy the goods, and offered the note described in the information for the property, exhibiting the trust deed, by which the note purported

to be secured, and representing that the abstract tendered for examination, it being the abstract described in the information, was a correct abstract of title to certain lands in Stonewall county, Texas, which lands the deed of trust mentioned purported to cover. Defendant told Mrs. Wheaton that the abstract shown her was the "original abstract" and was genuine. He represented that the firm of abstracters by whom the abstract purported to have been made, was a reliable one. As to the note, appellant represented to Mrs. Wheaton that he knew the payor's, Cole's, handwriting, that the note was signed by Cole and that Cole was a rich man; that he had known Cole a long time, and that he was a "good and wealthy man." Appellant also represented to Mrs. Wheaton that the deed of trust which he showed her, that described in the information, secured the note he exhibited and covered six hundred and forty acres of land in Stonewall county, Texas. Appellant declared to her that the deed of trust was genuine.

On these representations Mrs. Wheaton traded her goods for the note appellant had, relying upon the representations made by appellant. The trade was consummated in Watts' office, Watts going out for appellant after Mrs. Wheaton arrived. Appellant appeared, shortly, bringing the papers mentioned with him. Mrs. Wheaton gave a check to Watts for twenty-five dollars for commission, which was for the use of both Watts and appellant. On this occasion the same persons were present as at Mrs. Wheaton's home, and also Messrs. Murphy and Roarer. Mrs. Wheaton again asked if the abstract was all right, and was assured that is was.

As to the representations made by appellant, Mrs. Wheaton was corroborated by her daughter.

After the trade was made Mrs. Wheaton sent the abstract obtained from Steele to the firm of Perry & Johnson, Aspermont, Texas, by whom the abstract purported to be made. The letter to that firm was reg-

istered, but never delivered to the addressees, being returned by the postal authorities to Mrs. Wheaton. Investigation also developed that there was no such man as W. J. Cole, the pretended maker of the note traded to Mrs. Wheaton. It appeared that one Hebler or Hibler was in the habit of signing up papers for appellant under the name "W. J. Cole." Prior to trading the note to Mrs. Wheaton, appellant told one Miller that the "abstract was no good," and "wouldn't stand" if submitted to an attorney. It had been "turned down" by an examiner, prior to the trade with Mrs. Wheaton, so appellant admitted to Miller.

Appellant traded some of the land, covered by the same abstract exhibited to Mrs. Wheaton, to one Wilderboor, and attempted at the same time to trade more of the alleged Cole's Texas land. Appellant had attempted to procure one Dickinson to sign a "bogus note" and take a deed of trust made out in his name, but Dickinson refused. Appellant also prepared "bogus" abstracts, other than that used in the Wheaton transaction.

The abstract used in the Wilderboor trade was the one from which the abstract used in the trade with Mrs. Wheaton was copied. The former was represented by appellant, to Wilderboor's agent, to be "all right." An investigation disclosed that "there was no title to the property and no such land." Wilderboor executed his deed to his building, which he traded for the Texas land, in blank. Appellant traded the building to one Hargreave, and Hargreave's name was inserted as grantee, appellant informing Hargreave that he, appellant, "got the building from Wilderboor."

Appellant, it appeared, had had the abstract, used in the trade with Mrs. Wheaton, typewritten from a pencil copy which he furnished the stenographer for that purpose.

In his own behalf, defendant testified that he had not met the man Cole until after the date of the trade

with Mrs. Wheaton; denied having been at Mrs. Wheaton's house with Watts and Burgess; said that he never saw Mrs. Wheaton until the day he met her in Watts' office at the time the trade with her was closed; declared that he had nothing to do with the trade except to deliver the papers to Watts for Miller, the notary, and collect a dollar for him by way of notary fees; that he advised Mrs. Wheaton to consult a lawyer before closing the trade; denied making any representations to Mrs. Wheaton as to Cole; declared that when he delivered the papers in Watts' office he did not know what they were, and that he had no connection with the trade at all; that he received no part of the check given Watts by Mrs. Wheaton, but explained his indorsement of it by saying that he merely identified Watts and indorsed for him so that he could cash the check.

Defendant contradicted Miller in several particulars, contradicted Mrs. Wheaton and also Miss Keller, Mrs. Wheaton's daughter. He also denied Miss Balfour's testimony in part. He testified that he first saw the abstract identified as "Exhibit E" at the time Prater, Wilderboor's representative, was in his office. He admitted trading the Wilderboor property to Hargreave. Appellant declared that he was in no wise interested in the Texas land and that he had "received too many copies of the abstract without seeing the original, and it didn't look good to him." Appellant admitted that he had some Texas land "in his office," which he procured from a man who lived at Lone Jack; said he got the Wilderboor deed from one Witmer, "a trader down in Kansas," giving in exchange "some bonds."

There was also evidence for the defense to the effect that Mrs. Wheaton had at first charged Watts alone with defrauding her, and to the effect that Miller, one of the State's witnesses, and Cole, were the persons who seemed to have in hand the abstracts to the Texas

lands, notes, deeds, etc., used in swindling Mrs. Wheaton.

Other witnesses for the defense contradicted Miller with respect to certain portions of his testimony. Appellant was corroborated by the witness Schearer with respect to his indorsing the commission check for Watts.

The record also discloses that the witnesses, or at least some of the witnesses on the part of the State and upon which the State must rely for a conviction, were implicated in a number of crooked transactions. The standing of such witnesses for truth and veracity, honesty and integrity was of a very doubtful character.

At the close of the evidence the court instructed the jury and the cause was submitted to them for their consideration. We will give the instructions such attention as they may require during the course of the opinion. The jury, after the submission of the cause, returned a verdict finding defendant guilty as charged in the information and assessed his punishment at imprisonment in the penitentiary for a term of three years.

Timely motions for new trial and in arrest of judgment were duly filed and by the court taken up and overruled. Judgment and sentence followed in accordance with the verdict, and from this judgment the defendant prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

### I.

The first proposition with which we are confronted is the challenge of the appellant to the sufficiency of the information upon which the judgment in this cause rests. It is earnestly insisted that the information in this cause is insufficient, and in support of such insistence learned counsel for appellant rely upon the case of State v. Roberts, 201 Mo. 702.

Directing our attention to this information we repeat what was said in the statement of this cause, that the information is entirely too long and contains a number of unnecessary allegations, or at least the allegations might have been made in a more concise and concrete form; however, we have analyzed the charge in the form as embraced in the information, and in our opinion it substantially charges an offense of obtaining property under false representations and pretenses and contains every essential allegation necessary to charge the offense either under section 1927, Revised Statutes 1899, or under section 2213, Revised Statutes 1899.

Recurring to the case of State v. Roberts, relied upon by appellant, it is sufficient to say that the information in that case was predicated upon facts very similar to the case at bar. The fraud perpetrated was accomplished through representation concerning an abstract of title. A careful analysis of that case will demonstrate that the information was held insufficient on the ground that it failed to charge that the defendants feloniously, designedly and falsely pretended that the abstract was a true abstract and correctly represented the title.

In the case at bar we find that the objectionable features of the information in the Roberts case are fully met and covered by the information. We find this allegation in reference to the abstract: "And the said W. E. Steele and W. N. Watts, did then and there designedly, feloniously, falsely and fraudulently represent and pretend to the said Phianna Wheaton that the instrument and document purporting to be an abstract of title above set forth was a true and genuine abstract of title and had theretofore been made and prepared by Perry and Johnson, abstracters of Aspermont, Texas. And the said Phianna Wheaton, believing the said instrument and document, above set out, purporting to be an abstract of title, to be a true and genuine abstract of

title, and believing said false pretenses and representations so made as aforesaid by the said W. E. Steele and W. N. Watts to be true, relying thereon, and being deceived thereby, was induced by reason thereof to sell, transfer and deliver, and did then and there sell, transfer and deliver to said W. J. Cole and to his agent the said household goods and personal property above set out, enumerated and described, of the value of two hundred and sixty dollars, of the personal property of the said Phianna Wheaton." Obviously this fully meets the defect in the information as pointed out in the case of State v. Roberts.

## II.

This brings us to the consideration of the instructions complained of by the appellant. Our attention is directed to instruction numbered 1 given by the court, and the challenge interposed by learned counsel for appellant to the correctness of this instruction, in our opinion, is the most serious proposition in this case. This instruction is as follows:

"The court instructs the jury that if they find and believe from the evidence that at the county of Jackson and State of Missouri, at any time within three years next before the 12th day of October, 1908, the date of the filing of the information in this cause, the defendant, W. E. Steele, either alone or acting in concert with another, contriving, designing and intending to cheat and defraud one Phianna Wheaton of her goods, wares and merchandise, chattels and personal property, did apply to and request the said Phianna Wheaton to sell and transfer to one W. J. Cole, in exchange for a certain promissory note of the purport following, to-wit:

"$753.00                    Kansas City, Mo., March 27, 1908.
  One year after date I promise to pay to Henry Hughes or order,
Seven Hundred Fifty-three Dollars, at First National Bank, Kansas City, Missouri. For value received, with interest at 8 per cent per annum, from date until paid.
                                                W. J. COLE.

"One lot of household goods and furniture set out and described in the information in this case, and that said property was of the value of thirty dollars or more, and was the personal property of one Phianna Wheaton. And to induce said Phianna Wheaton to sell and transfer said personal property and to effect their said design to cheat and defraud, the said W. E. Steele either alone or acting in concert with another did then and there designedly, feloniously and fraudulently represent and pretend to said Phinna Wheaton that he, the said W. E. Steele, was then and there well acquainted with and personally knew one W. J. Cole, the maker of the promissory note above set out; and that said W. J. Cole was a real person and was a reliable and responsible man, and was then and there solvent, and that said promissory note above set out was a true and genuine note and had been made out, signed and executed by said W. J. Cole, in his own proper person, and that the signature of one W. J. Cole to said promissory note was the true and genuine signature of the said W. J. Cole.

"And to induce said Phianna Wheaton to sell and transfer said personal property and to effect their said design to cheat and defraud the said W. E. Steele either alone or acting in concert with another did then and there designedly, feloniously, falsely and fraudulently represent and pretend to said Phianna Wheaton that the said W. J. Cole was then and there the owner of the following described real estate, to-wit:

"All of section eleven, certificate 2116, survey No. 37, as filed May 15, 1904, book 47, page 211, etc., block 248, in Stonewall county, Texas, and that the said W. E. Steele either alone or acting in concert with another

did then and there designedly, feloniously, falsely and fraudulently show and exhibit to the said Phianna Wheaton a certain false abstract of title and a certain false writing and false token, purporting to show the title to the real estate above described, to be vested in the said W. J. Cole, and set out in the information.

"And to induce said Phianna Wheaton to sell and transfer said personal property and to effect their said design to cheat and defraud the said W. E. Steele, either alone or acting in concert with another did then and there designedly, feloniously, falsely and fraudulently represent and pretend to said Phianna Wheaton that the payment of the promissory note above set out was secured by a certain deed of trust theretofore made, executed and acknowledged by the said W. J. Cole upon the real estate above-described in Stonewall county, Texas. That said deed of trust had been signed and acknowledged by the said W. J. Cole in his own proper person, that said deed of trust was a true and genuine deed of trust and had been made and executed by said W. J. Cole for the purpose of securing the payment of the promissory note above set out, and that the said W. E. Steele either alone or acting in concert with another, did then and there designedly, feloniously, falsely and fraudulently show and exhibit to the said Phianna Wheaton a certain instrument purporting to be a deed of trust, described and set out in the information. And that the said W. E. Steele either alone or acting in concert with another did then and there designedly, feloniously, falsely and fraudulently represent and pretend to the said Phianna Wheaton that the instrument and document purporting to be an abstract of title above set forth was a true and genuine abstract of title and had been theretofore made and prepared by Perry and Johnson, abstracters of Aspermont, Texas. And that the said Phianna Wheaton believing the said in-

strument and document above set out purporting to be an abstract of title and believing said false pretenses and representations so made as aforesaid by the said W. E. Steele to be true and relying thereon and being deceived thereby was induced by reason thereof to sell, transfer and deliver and did then and there sell, transfer and deliver to said W. J. Cole and to his agent, the said household goods and personal property above set out, enumerated and described, of the value of thirty dollars or more, of the personal property of the said Phianna Wheaton, in exchange for the promissory note above set out, and that the said promissory note was then and there delivered by the said W. E. Steele or another acting in concert with him to the said Phianna Wheaton, and that the said W. E. Steele, either alone or acting in concert with another, by means of the said false pretenses and representations so made as aforesaid, and by means and by use of the said false writing and false token purporting to be an abstract of title, above set out and described, unlawfully, feloniously and designedly did obtain of and receive from said Phianna Wheaton the personal property above set out, enumerated and described of the value of thirty dollars or more, of the personal property of the said Phianna Wheaton with the felonious intent then and there her the said Phianna Wheaton to cheat and defraud of the same; whereas in truth and in fact the said W. J. Cole was not then and there a real person, and that said name W. J. Cole was then and there an assumed and fictitious name. Whereas in truth and in fact said W. J. Cole was not then and there a reliable, responsible and solvent person; whereas in truth and in fact said instrument and document purporting to be an abstract of title was not then and there a true and genuine abstract of title and had not been theretofore made and prepared by Perry & Johnson, abstracters of Aspermont, Texas, but was then and there a false, bogus, forged and counterfeited

abstract of title and had been prepared by persons other than Perry & Johnson, abstracters of Aspermont, Texas, and whereas in truth and in fact said deed of trust was not a true and genuine deed of trust, and had not been made and executed for the purpose of securing the payment of the promissory note above set out and described, but had been made for the purpose of cheating and defrauding, and whereas in truth and in fact said W. J. Cole was not then and there the owner of all of section 11, certificate No. 2116, survey No. 37, as filed May 15, 1904, book 47, page 211, etc., block 248, in Stonewall county, Texas, nor any part thereof, and all of which he, the said W. E. Steele, then and there well knew, then you will find the defendant guilty, as charged in the information, and assess his punishment at imprisonment in the State penitentiary for a term not less than two years, and not more than five years.

"Feloniously, as used in this instruction, means wickedly and against the admonition of the law, unlawfully."

Manifestly this instruction cannot be commended on account of the length of it. It is entirely too long and the issues in this cause could have been presented to the jury much more satisfactorily by a few short, pointed instructions which would have been very readily comprehended by the jury; however, the length of this instruction alone would not warrant this court in reversing the judgment, unless it contained objectionable features which constitute reversible error. This instruction first requires the jury to find about all of the essential facts necessary to constitute the offense, and had it stopped there, there would be but little ground for complaint, but it will be observed that after directing the jury that if they believe and find from the evidence that false and fraudulent representations were made concerning the abstract and other instruments and that such instruments were in fact

not genuine but false and fraudulent, the court then as a matter of law assumes and so tells the jury that those instruments were false and fraudulent, and states to the jury, after directing their attention to the subjects requiring them to find the facts in respect to false and fraudulent representations, using this language: "Whereas in truth and in fact the said W. J. Cole was not then and there a real person, and that said name W. J. Cole was then and there an assumed and fictitious name. Whereas in truth and in fact said W. J. Cole was not then and there a reliable, responsible and solvent person; whereas in truth and in fact said instrument and document purporting to be an abstract of title was not then and there a true and genuine abstract of title and had not been theretofore made and prepared by Perry & Johnson, abstracters of Aspermont, Texas, but was then and there a false, bogus, forged and counterfeited abstract of title and had been prepared by persons other than Perry & Johnson, abstracters of Aspermont, Texas, and whereas in truth and in fact said deed of trust was not a true and genuine deed of trust, and had not been made and executed for the purpose of securing the payment of the promissory note above set out and described, but had been made for the purpose of cheating and defrauding, and whereas in truth and in fact said W. J. Cole was not then and there the owner of all of section 11, certificate No. 2116, survey No. 37, as filed May 15, 1904, book 47, page 211, etc., block 248, in Stonewall county, Texas, nor any part thereof, and all of which he, the said W. E. Steele, then and there well knew, then you will find the defendant guilty, as charged in the information, and assess his punishment at imprisonment in the State Penitentiary for a term not less than two years, and not more than five years."

Obviously the court in the use of that language in the instruction was simply copying the negative allega-

tions embraced in the information, wherein the truth of the representations were negatived.

It was essential in the first place to require the jury to find that the false and fraudulent representations were made concerning the abstract and other instruments, and that such representations were false and fraudulent, and the court in the instruction now under consideration so directed the jury, but then undertakes to add, by telling the jury that whereas in truth and in fact everything that had been said or done was false and fraudulent. Manifestly that declaration was susceptible of a construction by the jury that the court was declaring as a matter of fact that the abstract was not genuine and was false and fraudulent, and even though it was not susceptible of that construction it is clearly confusing and misleading. In our opinion it would be but the natural conclusion of the jury that the court meant by that declaration to tell them that the abstract was not genuine and was false and fraudulent as a matter of law.

Again, this instruction is defective or at least inartistically drawn, for the reason that it nowhere sets out the abstract of title, but in one or two different places in the instruction it refers the jury to such false writing and token purporting to be an abstract of title, as above set out and described. In our opinion it was not absolutely essential to set out the abstract of title in the instruction, but if it was not set out then the court should not have referred the jury to the abstract of title as set out in the instruction, when no such instrument was embraced in the instruction. This defect, in our opinion, would not, if standing alone, warrant the reversal of the judgment for the reason that there is sufficient in the instruction to point out to the jury the legal effect of the abstract, and that would cure the reference to the abstract as set out in the instruction.

This instruction in the first particular to which we have directed attention was calculated to mislead

and confuse the jury, and in fact the declarations of the court, when recopying the negative allegations in the information, were susceptible of the construction by the jury that the court intended to declare that the abstract of title was not genuine and was false and fraudulent.

We have analyzed very carefully the disclosures of the record in this cause, and the case as against this defendant is not a one-sided one by any means. The most important and vital testimony relied upon by the State is given by some of the witnesses who clearly have an object and purpose in convicting this defendant. The record discloses that Miller said to some of the witnesses that he was testifying for the reason that he would be given immunity from certain charges against him. Even the prosecuting witness, Mrs. Wheaton, seemed in the first instance to direct the prosecution entirely against Watts, and never mentioned this defendant's name in connection with the commission of this offense.

While the testimony on the part of the State may be sufficient to sustain a verdict of guilty, yet when all the features connected with the testimony of the State are considered, it is clear that in order to sustain a conviction the issues as presented by this charge should be clearly and pointedly presented to the jury.

This instruction did not properly present the issues to the jury, and for this error the judgment should be reversed and the cause remanded.

### III.

Numerous other complaints are made by appellant as a basis for the reversal of this judgment. These complaints are directed principally to the admission of incompetent evidence.

As this case must be retried it is only necessary to briefly indicate our views upon some of the questions of evidence. When the prosecuting witness was

on the stand she was requested by counsel for the State to tell the jury whether or not she made any investigation to ascertain whether or not this abstract was genuine and whether it was made by Perry & Johnson, Aspermont, Texas, after this deal was commenced. A question then was put in this form: "What was the nature of the investigation, what did you do with reference to investigating this mater to ascertain whether or not this title was all right or not?" An objection was interposed to this question as being irrelevant, incompetent and immaterial and not the best evidence and. hearsay. The objection was overruled and the witness was permitted to state that she sent the abstract to Perry & Johnson by registered letter. She also further stated that all the papers laid in the postoffice in Texas for a month and that she had the postoffice authorized to hunt them up. This last statement of the witness, however was, upon motion, stricken out by the court. This testimony we are inclined to regard as inadmissible. An investigation which is made and the results of it by correspondence, in our opinion would amount to mere hearsay. If the prosecuting witness went to the town in Texas and made inquiry of different persons, who would, in all probability, know the business people of the town, and could find no such firm as Perry & Johnson, abstracters, she might, with propriety, state the result of her investigation; not what the people in the town told her, but as to her trying to find out whether or not Perry & Johnson were in business, but simply to send papers to the town in Texas and the fact that they were not called for at the postoffice, or if she authorized other people to inquire, whatever information they might write her would not be competent as evidence against the defendant. If the witness who gave her the information was introduced and would testify that he was familiar with the business people of the town and that no such firm re-

sided there or did business there, that would be competent.

Complaint is also made of the refusal of the court to permit a proper cross-examination of the complaining witness as to conversations she had relative to the transaction of Watts in transferring and selling the rooming house. It seems that in the first place the complaining witness directed her complaint as to being defrauded against this man Watts, and it is sufficient to suggest that great latitude is allowed in the cross-examination of witnesses, particularly when their testimony upon one trial varies to some extent from that upon a former trial. It is insisted by counsel for appellant that the testimony of the prosecuting witness in this cause is entirely different to what it was in the preliminary trial when Watts and defendant were both being tried. In that preliminary trial the attempt by the prosecuting witness was to make her case against Watts and not against the defendant.

There is no merit in the complaint of the appellant as to the asking of leading questions. That is a matter resting largely within the discretion of the court, and unless there is some disclosure showing an abuse of such discretion it can avail appellant nothing upon appeal.

Other complaints are made concerning the action of the court in respect to excluding competent evidence and admittting incompetent evidence and commenting upon the examination during the progress of the trial. It is sufficient to say of these complaints that the rules of evidence applicable to cases of this character are very well settled, and we at least feel that the presumption should be indulged that upon a retrial of this cause the court will only admit such evidence as has some tendency to establish the issues involved in the case. As before stated, in the cross-examination of witnesses, those who have any interest in the prosecution or those who by testifying are to receive some immunity from

criminal charges, great latitude should be allowed. Legitimate and proper cross-examination is one of the well-recognized methods of ascertaining the truth. While to both the examination in chief and the cross-examination there should be a limit, we take it that where questions are propounded which tend to throw light upon the subject under investigation, the court should not exclude such questions or answers to them.

## IV.

It is sufficient to say as to the complaint of instruction numbered two that if upon a retrial of the case there is substantial evidence upon which to predicate that instruction, there is no impropriety in giving it. An instruction similar in form and upon the same subject was approved in the very recent case of State v. Wilson, 223 Mo. 156.

## V.

One of the grounds alleged in the motion for new trial is based upon alleged newly-discovered evidence. An examination of the record before us discloses an entire absence of any affidavit supporting this ground, hence it is not before us for review. [State v. Williams, 199 Mo. 137.]

We have indicated our views upon the most important propositions disclosed by the record, and for the errors indicated the judgment of the trial court should be reversed and the cause remanded. It is so ordered. All concur.