**STATE of Missouri, Respondent,**

v.

**Jesse STATLER, Appellant.**

No. 47413.

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1960.

Joseph M. Settich, St. Louis, for appellant.

John M. Dalton, Atty. Gen., William C. Blair, Sp. Asst. Atty. Gen., for respondent.

HYDE, Presiding Judge.

Defendant was found guilty of sodomy, per os, and his punishment assessed at 10 years in the penitentiary (Sec. 563.-230, statutory references are to RSMo, V.A.M.S.) and has appealed from the judgment and sentence entered. Defendant has filed no brief so we consider the assignments properly made in his motion for new trial. State v. Stehlin, Mo.Sup., 312 S.W. 2d 838.

Defendant claims error in failing to sustain his motion for judgment of acquittal (assignments 5 and 6) but this is apparently based on his claim (assignment 1) that the boy who testified to the act of sodomy

upon him was not a competent witness and upon his claim that his confession was inadmissible (assignment 3) because elicited by promises of leniency. Of course, defendant's claim of refusal of judgment of acquittal at the close of the State's evidence (assignment 5) was waived by defendant offering evidence thereafter. See State v. Shelby, Mo.Sup., 327 S.W.2d 873, 874, and cases cited. Thus the principal issues, on defendant's contention that he was entitled to a judgment of acquittal at the close of all the evidence, are the competency of the boy and the admissibility of the confession. We would probably have to hold that a jury case against defendant would not be made without the boy's testimony.

The boy (hereinafter sometimes referred to as Tommy) involved was 13 years old at the time of the alleged act, 14 at the time of the trial. He was mentally retarded and still in the third grade in school and was attending a special school for such children. Defendant sets out four reasons (under assignment 1) for claiming the boy was incompetent, as follows: "A. The witness did not know that he was a sworn witness. B. The witness did not know the difference between the truth and a lie. C. The witness did not know that he was testifying under the pains and penalties of perjury. D. The witness was utterly incompetent in that he did not have a memory sufficient to retain an independent recollection of the observations made."

 A child over 10 years of age is prima facie a competent witness (Sec. 491.-060) but may be shown to be incompetent. State v. Jackson, 318 Mo. 1149, 2 S.W.2d 758, 760; see also Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S.W.2d 858, 862; State v. Jones, 360 Mo. 723, 230 S.W. 2d 678, 681; State v. Villinger, Mo.Sup., 237 S.W.2d 132, 134. In the Burnam and Jones cases we stated and applied the following four fundamental elements of the test of competency of a child to be a witness: "(1) 'Present understanding of or intelligence to understand, on instruction, an obligation to speak the truth; (2) mental capacity at the time of the occurrence in question truly to observe and to register such occurrence; (3) memory sufficient to retain an independent recollection of the observations made; and (4) capacity truly to translate into words the memory of such observation.'" In this case, the boy although over 10 years of age was shown to be mentally retarded. The rule is that, "In each case the trial judge is to determine by appropriate questions the competency of the child offered as a witness, and his decision can only be set aside where he has abused his judicial discretion." State v. Jones, supra, 230 S.W.2d loc. cit. 680, 681; see also State v. Groves, Mo.Sup., 295 S.W.2d 169, 172, and cases cited. In this case, the court held a preliminary hearing for this purpose. The boy stated his age and date of birth, the city and state where he was born, pointed out defendant, said that defendant had a secondhand store and told the streets which intersected at its location; and also gave the names of the schools he had attended and the streets on which his present school was located. He went to church sometimes alone and sometimes with his sister and little brother. It is true that when first questioned by defendant's counsel he answered "No" to the following questions: "Do you know what the nature of an oath is?" "Do you know what it means to tell the truth?" "Do you know what a lie is?" However, defendant's counsel also asked the following questions, receiving the following answers:

"Q. Did you know what it was when you raised your right hand in front of the clerk here? A. To tell the truth. * * *

"Q. Tommy, do you know what kind of trouble you will get into if you don't tell the truth? A. Get in a lot of trouble. * * *

"Q. Who will get you in trouble? A. I don't know; sometimes cops.

"Q. Tommy, do you have any idea who will punish you, other than the cops, if you tell a lie? A. God."

The trial court, in ruling the boy competent, stated the matter thus: "He says he knows the nature of an oath, that he swears to tell the truth, that if he doesn't tell the truth he gets into a lot of trouble. You asked him who, and he said: with the cops, with God, and his father."

The court also had before it the boy's deposition, taken by defendant's counsel, which was read in evidence by the State.

On this subject, it is said in 3 Wharton's Criminal Evidence 95, Sec. 762: "It is not, however, necessary that the child should be able to define an oath, perjury, or testimony, if it is shown that he comprehends that upon taking an oath he is thereby bound to tell the truth and only the truth. The child, if intelligent, is competent, even though he may not have been told the nature of an oath or its obligations until he learns them in court. It is likewise not important that the child be able to answer abstract questions on matters of general knowledge." We think the trial court's ruling was proper and disposes of the first three reasons stated in defendant's motion. As to the fourth, the boy's testimony both at the trial and in his deposition was clear, detailed and complete as to his activities, location of places, sequence of events and the act in which he said defendant forced him to participate. He was not confused as to these matters by cross-examination and he was corroborated in much of his testimony by the testimony of a twelve-year-old companion, whose competency was not questioned. He told his companion's parents about the act with defendant soon after the time he said it occurred. We think his testimony shows that he did have a memory sufficient to retain an independent recollection of the observations made. On the entire showing, we cannot hold that the trial court's ruling was an abuse of discretion and must rule that this testimony was properly admitted. We further hold that the boy's description of the act of sodomy by mouth in the back room of defendant's store, with the partial corroboration by defend-

ant's companion who saw them there by looking in through a rear window (defendant was facing away from this window with the boy in front of him) was sufficient to make a jury case against defendant and to support a verdict finding him guilty, without the evidence of an oral confession by defendant.

On the admissibility of defendant's oral confession, the evidence was that the act with the boy was on January 22, 1958, and defendant was arrested on January 24th about 3:40 P.M. When questioned at that time by the arresting officer, Patrolman Cook, he denied the act and when questioned again by the same officer later that evening, after the two boys had been brought in to view him, he denied it again. On the morning of the 25th, defendant was taken to the District Police Headquarters to be questioned by Detective Armstrong. Cook was not in the room with them but could see and hear what took place by means of a mirror and microphone. From a preliminary hearing before the court on the issue of voluntariness, it appears that defendant took a lie detector test in the room, after which questioning continued. (The jury was not told anything about this test.) According to his deposition, Cook had said that Armstrong then told defendant that it might go a little bit easier on him if he confessed. In his testimony at the trial, Cook said he guessed he said that in his deposition but he did not remember saying it and did not remember Armstrong telling defendant that. He said defendant did admit the act to Armstrong, after the lie detector test, and again later to him but defendant was not asked to sign a written confession. Armstrong said his questioning lasted 35 or 40 minutes and that defendant at first denied it. His testimony was that he said to defendant: "Don't you think you would be better off by trying to clear your own conscience and get this off your chest?" He also said: "I would never tell a man that, by admitting a thing, it would go easier with him. * * * [W]e rely on the conscience of the individual that we are

talking to. We try to appeal and to impress on the individual what he has done as a matter of conscience. * * * Q. (By Mr. Settich) What type of question did you ask Mr. Statler that elicited or brought forth this admission that you have testified to? A. Probably it was a question about getting this off of his chest, getting straight on this." In his preliminary examination, Armstrong said he told defendant the results of the lie detector test and said: "I probably mentioned it in this way: that as long as he was guilty, that it sometimes happens that if guilty people plead guilty to the charge, then they can go into court, state their case to the Judge, and quite frequently they get off with less time than they would if they went to trial in front of a jury on it." He also said he did "tell him about innocent people, that if they are innocent they should still maintain their innocence and not admit to anything." Defendant denied that he made any admission of the act to the officers or made any statements to them except to deny that he did it.

■ In a very recent case, the United States Supreme Court said it "has established the principle that the Fourteenth Amendment is grievously breached when an involuntary confession is obtained by state officers and introduced into evidence in a criminal prosecution which culminates in a conviction"; and that, on this issue, it "has insisted that the judgment in each instance be based upon consideration of 'the totality of the circumstances.'" Blackburn v. State of Alabama, 80 S.Ct. 274, 279. Even though inconsistent, "A defendant may raise the objections to an alleged confession (1) that he never made the confession; and (2) that if it was made it was not voluntary." 2 Wharton's Criminal Evidence 36, Sec. 349; Lee v. State of Mississippi, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330. When made to officers while in custody, "the State has the burden of proving the 'voluntariness' of a confession." State v. Bradford, Mo.Sup., 262 S.W.2d 584, 586, and cases cited. As shown by these author-

ities, the court may determine that the confession was involuntary from the evidence at the preliminary hearing or, if it decides after such hearing to let the issue go to the jury, it may make such ruling upon the evidence introduced at the preliminary hearing and the evidence introduced before the jury; and if the evidence conclusively shows the confession involuntary this court should hold it inadmissible as a matter of law. State v. Bradford, supra, 262 S.W.2d loc. cit. 586, and cases cited. However, if there is substantial conflicting evidence on the issue and if the issue is close, it is better to submit this question to the jury. See also State v. Menz, 341 Mo. 74, 106 S.W.2d 440; State v. Ellis, 354 Mo. 998, 193 S.W.2d 31, 37; State v. Sanford, 354 Mo. 998, 193 S.W.2d 37. In this case the issue was submitted to the jury on an instruction as to which no complaint is made.

■ There was no testimony by defendant that any promise of leniency was made to him or any inducement offered but instead he said that, at all times, he denied that he had committed any act of sodomy. Armstrong denied that he said it would go easier with him if he confessed and said he told him that if he was innocent he should not admit to anything. While Cook was not so positive about what Armstrong said, we think it was proper to leave the issue of voluntariness to the jury on "the totality of the circumstances." We do not think we can say that this evidence conclusively shows defendant's oral confession was involuntary and inadmissible as a matter of law. An adjuration to tell the truth unaccompanied by a threat or promise does not render a confession involuntary. 2 Wharton 84, Sec. 367. Whether advice to confess renders a confession following it involuntary depends on whether the accused.could gather some hope of benefit by confessing but "mere advice to confess if guilty, and if not, to stand firm, does not render the confession involuntary." 2 Wharton 87, Sec. 368; see also 20 Am.Jur. 438, Sec. 508; Annotations, 18 L.R.A.,N.S., 812; 50 L.R.A.,N.S., 1086; 22 C.J.S. Criminal Law §

817, p. 1435; State v. Aitkens, 352 Mo. 746, 179 S.W.2d 84, 89; State v. Ball, Mo.Sup., 262 S.W. 1043, 1046; State v. Brooks, 220 Mo. 74, 83, 119 S.W. 353. Considering the whole situation and all that was said and done, and that two different interpretations might reasonably be made, our conclusion is that there was substantial evidence to support a finding that a voluntary confession was made and therefore the matter is ended by the verdict of the jury.

■ Defendant claims error in refusal of his motion for mistrial made on two occasions (assignments 2 and 4) because of answers made by witnesses for the State to questions on cross-examination by defendant's counsel, which he says were voluntary and unresponsive and amounted to charging him with crimes separate and distinct from that charged in the information. One of these was, in the cross-examination of the boy's 12-year-old companion, who said he went home to get his father after he had seen defendant with Tommy in the back room. These questions and answers were as follows:

"Q. What did you tell your mother and dad when you went back? A. I was going back to get Tommy.

"Q. Did you tell them what was happening? A. Yes, sir.

"Q. What did you tell them was happening? A. That Statler had Tommy in the back room.

"Q. Did you tell them anything else? A. No, sir—whenever I said that, they knew what I meant.

"Q. They knew what you meant? A. Because Statler tried to get me before.

"Q. Beg pardon? A. Tried to bribe me before.

"Q. Tried to bribe you? A. Yes, sir, tried to—

"Mr. Settich: Just a minute. Your Honor, at this time I would ask that a mistrial be declared, as the voluntary statement

on the part of this witness is definitely not responsive to the question.

"The Court: Overruled."

(Both defendant and Tommy had said that defendant had given him, Tommy, a quarter before he left defendant's store.) As to this incident, after the answer was made indicating that the witness meant defendant had attempted improper conduct with him, defendant's counsel asked two more questions about the matter and the answers of the witness were certainly responsive to those questions so that defendant cannot be heard to complain about matter he thus brought out.

■ The other incident was during the examination of Detective Armstrong after his answer on direct examination, saying defendant "admitted to me" (stopped by the objection before he said what was admitted) was stricken as a conclusion. The record shows that defendant's counsel then stated the question thus: "What, if anything, did Jesse Statler say to you about that?" Armstrong answered by stating defendant's description of his act of sodomy with the boy and then adding: "He further stated that this had happened on other occasions." Defendant's counsel asked that a mistrial be declared because "it is not responsive." When this was overruled, he asked that a mistrial be declared for the reason that "it is an introduction of a separate and distinct offense for which this defendant is not charged." This motion was also overruled. As to this second incident, there was no motion to strike (see State v. Dalrymple, Mo.Sup., 270 S.W. 675; State v. Warren, 317 Mo. 843, 297 S.W. 397) and no request for any other action. "Declaring a mistrial for conduct of a witness or spectator lies largely within the discretion of the trial judge (State v. Baker, Mo.Sup., 293 S.W.2d 900, 902, and cases cited); and this is true where a voluntary statement is made by a witness. See Plannett v. McFall, Mo.App., 284 S.W. 850, 854, and cases cited. The question asked Detective Armstrong that brought out the

part of his answer upon which this claim of error is made was so very broad that it can hardly be said that any of the answer was unresponsive. ("What, if anything did Jesse Statler say to you about that?" Referring to what defendant told the officers.) Although it would have been proper and better for the court, on its own motion, to have told the jury to disregard that part of his answer, nevertheless, under all the circumstances, we cannot hold that there was an abuse of discretion in refusing to declare a mistrial. See also State v. Stillman, Mo.Sup., 301 S.W.2d 830, 834; State v. Crocker, Mo.Sup., 275 S.W.2d 293, 296. We, therefore, hold that the court's ruling was not prejudicially erroneous.

 Defendant also claims error (assignment 7) "in overruling the defendant's motion for a mistrial and discharge of the jury during the closing arguments of the plaintiff when the Assistant Circuit Attorney argued the evidence of prior convictions as evidence of guilt of the offense of sodomy and not as evidence to increase the punishment in the event a verdict of guilty was found by the jury." The only motion for mistrial shown during the closing argument was based on defendant's objection to reference to former convictions as affecting defendant's credibility. The court sustained defendant's objection but overruled the motion and there is no assignment of error in the motion for new trial as to this action. The only other reference, in the closing argument, to former convictions plainly stated "if you decide the defendant is guilty, then you can consider the evidence of his prior convictions in determining the punishment." No objection or motion was made as to this part of the closing argument. Since defendant had been charged under the habitual criminal statute (Sec. 556.280), it was proper to make this statement. But see 1959 amendment, S.B. 117, V.A.M.S., August 1959 Pamphlet.

The only other assignment in the motion ("8. That the verdict of the jury was against the weight of the evidence")

has many times been held too general to preserve anything for appellate review under the requirements of Rule 27.20, 42 V.A. M.S. We have examined the record as required by Rule 28.02 and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

All concur.