STATE of Missouri, Respondent,

v.

Billy BARNETT, Appellant.

No. 48054.

Supreme Court of Missouri,

Division No. 2.

Oct. 10, 1960.

Graves & Graves, Neosho, James Tatum, Pineville, for appellant.

John M. Dalton, Atty. Gen., George E. Schaaf, Sp. Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was convicted of first degree robbery in the Circuit Court of Newton County, on change of venue from McDonald County. The jury assessed his punishment at five years' imprisonment, but recommended "leniency." Motion for new trial was duly filed and overruled and the defendant sentenced. On this appeal the sole question briefed is the alleged error in admitting in evidence a signed confession. With the case in this posture we need not detail the facts of the robbery at length.

On the evening of December 19, 1957, the operator of a liquor store at Tiff City, Missouri, was robbed. Two men entered the store, one armed with a pistol and one with a shotgun; they wore stocking masks. They took the owner's billfold, made him open a safe and took what money they found there, and rifled the cash register. The owner, Julius Martin, was shot in the hand during these proceedings; he testified that the robbers took approximately $400. He was unable to identify the defendant at the trial. Defendant was taken into custody around midnight on May 18–19, 1958, in Seneca, where he lived. The officers apparently took him in for investigation concerning another matter. He was placed in jail at Neosho soon after midnight, on the 19th of May. No charge was filed against him on that date. After the officers had questioned certain other persons on the evening of the 19th of May, they decided to interrogate defendant concerning the robbery of the liquor store. He was brought to

the office of the prosecuting attorney at approximately 1:30 a. m. on May 20, 1958, and the interrogation continued, off and on, until about 3:00 a. m.

Since defendant relies solely on what occurred there to establish the supposed invalidity of the confession, we shall state that part of the evidence in some detail. As best we can ascertain, the following persons were present during substantially the whole period: Mr. Hurn, Prosecutor of Newton County, Mr. Collingsworth, Prosecutor of McDonald County, Trooper Norman, a State Highway Patrolman, the Sheriff of McDonald County, the Sheriff of Newton County and the Juvenile Officer of Newton County. Apparently two or three other persons were in and out. The questioning was conducted by the two prosecuting attorneys. A woman friend of the defendant and of his mother was present, at least for much of the time, and there was substantial evidence that she and defendant were permitted to talk alone for 20–30 minutes before defendant actually made the confession. There was also substantial evidence that the Newton County Prosecutor advised defendant that he did not have to make any statement, that if he did it could be used against him, and that he had the right to call an attorney, indicating the presence of the desk telephone. There is no contention of physical abuse. One witness thought that defendant was told that it would be better for him if he told the truth; that evidence was given at a pretrial hearing. Defendant's testimony at the trial was that he was nervous and mixed up, that "maybe" he signed "to get it over with," that they refused to let him call his mother, and that he recalled nothing after that. When asked why this latter statement was true, he stated: "I don't know, just nervous and I couldn't think. That's all." He testified that he did not recall any advice that he might call a lawyer or that he did not have to confess, but that they might have told him these things. He recalled no "abuse," declined to say that anyone had threatened him, and recalled no threats or

inducements. He denied knowing what was in the confession, specifically denied all participation in the robbery, and testified to facts which supposedly established an alibi. Defendant was 26 years old at the time of trial; he had apparently completed a high school course and "close to two years" of business college.

The testimony of the officers present, considered collectively, was: that defendant appeared entirely rational; that he was nervous and concerned, and that perhaps his hands trembled occasionally, but that this did not seem particularly unusual; that after defendant and his friend Mrs. Bryant had talked alone for 20–30 minutes one of the prosecutors asked defendant what he had to say and that defendant then said he wanted to make a statement; that his answers to questions were logical and deliberate, and that he appeared "very aware of what was going on"; that he admitted the robbery and related the various details incorporated into the confession (in which, incidentally, he attributed the idea, the leadership and the shooting to his companion); that no promises or threats were made and no abuse or coercion employed; that the confession contained what defendant told them, and that it was read to him and by him. Apparently Mrs. Bryant had been called in by one of the officials and not by the defendant. None of these witnesses, with one exception, recalled any request by defendant for permission to call his mother; that one, the Newton County Prosecutor, testified in rebuttal that defendant "may have mentioned calling his mother," but that, if so, he never asked permission to use the phone and that such a request would have been granted; also, that he could have used the phone on the desk at any time when he and Mrs. Bryant were alone.

The Sheriff of McDonald County testified that after defendant was returned there and while he was in jail he told the Sheriff orally that "they did rob this liquor store at Seneca," and that he thought once of giving himself up to the Sheriff but had changed his mind. In answer to a question

by the court, the Sheriff testified that he could not say that defendant told "what robbery" he was referring to. The robbery charged did not, in fact, occur at "Seneca."

A former school teacher of defendant testified that he was nervous, "easily excited," emotional, and easily led by one in "authority." The testimony of a neuro-psychiatrist who had examined defendant was read. He testified as an expert that defendant was emotionally unstable, not insane, and that in his opinion, based on hypothetically stated facts concerning the interrogation plus the history received at the examination, defendant would have done "practically anything to get away from the stress he was under." Certain lay evidence had been offered at the hearing on a pre-trial motion seeking to exclude the confession; this, generally, was to the effect that defendant was nervous, easily excited, and easily influenced; some of these witnesses were there permitted to testify that defendant would go along with a group, or be inclined to be a "yes" man, and particularly so under the circumstances of his questioning in this matter. Much of this evidence consisted so obviously of conclusions and speculations as not to be helpful. Though it is somewhat unclear, it appears also that the evidence of the psychiatrist was received at this pretrial hearing. That motion was overruled.

The procedure of hearing such evidence before trial, or outside the presence of the jury, was proper. State v. Bellew, Mo., 282 S.W.2d 536; State v. Phillips, Mo., 324 S.W.2d 693. Upon that evidence the court could not conclusively say that the confession was involuntary, and it therefore properly reserved the question for the trial. State v. Statler, Mo., 331 S.W.2d 526. There it became an issue of fact unless on all the evidence the trial court could say that the confession was involuntary as a matter of law. Statler, supra.

Neither the objections made to the confession at the trial, the specifications in the motion for new trial, nor the "Points Relied On" in appellant's brief are as specific as our procedure and rules contemplate. Under the particular circumstances presented here, we have decided to consider the merits of this single point. In essence, it is contended: that the confession was inadmissible because it was obtained by "mental punishment" or mental coercion which deprived defendant of a "free choice" and rendered it involuntary; and that this involves a consideration of the "age, character, experience and intelligence" of defendant, and of all the circumstances. There is no doubt about certain of the abstract principles stated. A confession obtained by mental coercion or mental punishment is incompetent as evidence. State v. Bradford, Mo., 262 S.W.2d 584; State v. Ellis, 354 Mo. 998, 193 S.W.2d 31, certiorari denied 328 U.S. 873, 66 S.Ct. 1374, 90 L.Ed. 1642; State v. Butts, 349 Mo. 213, 159 S.W.2d 790, 140 A.L.R. 1177; Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801. It is also true that the age, experience and intelligence of the accused must be considered, along with all the other circumstances. Bradford, supra; Ellis, supra; State v. Fredericks et al., 85 Mo. 145. We note here that no question of insanity is involved, and that all witnesses interrogated on the subject rejected the idea that defendant was insane. Nor is there any claim whatsoever of physical abuse or coercion.

Defendant's sole ground for contending that the confession was involuntary is: that he was nervous and "mixed up" after being held in jail for approximately twenty-four hours; that he was questioned by or in the presence of several officers in the early morning hours for an hour and a half or two hours without counsel or family; that he was of a nervous, excitable disposition, "emotionally unstable," and that he could not recall much of the proceedings; and, arguendo, that he simply succumbed to this supposed pressure and signed the confession as a means of escape from it, although this has not been stated

definitely, even in his own testimony. On the contrary, there was substantial evidence that, although defendant was nervous as might readily be expected, his answers were clear, rational and logical, that no threats or promises whatever were made, that he was advised that he might call an attorney but declined, that he was advised that he did not have to make a statement, that he was permitted to talk alone with a friend for 20–30 minutes, and that he did not appear mentally disturbed but did appear to be "very aware" of the proceedings. We note also the evidence that defendant later told the Sheriff at Pineville, in a conversation, that he had participated in the robbery of a liquor store, the details being absent and the place being somewhat incomplete or inaccurate.

Counsel cite the following cases as indicating that the confession was involuntary: State v. Bradford, Mo., 262 S.W.2d 584; State v. Powell, 266 Mo. 100, 180 S.W. 851; State v. Fredericks et al., 85 Mo. 145; State v. Ellis, 354 Mo. 998, 193 S.W.2d 31, certiorari denied 328 U.S. 873, 66 S.Ct. 1374, 90 L.Ed. 1642; State v. Butts, 349 Mo. 213, 159 S.W.2d 790, 140 A.L.R. 1177; Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801; State v. Todd, 342 Mo. 601, 116 S.W.2d 113. It is unnecessary to discuss the facts of all those cases. The principles announced are established and may be conceded, but the factual situations in those cases were much more exaggerated than is ours. Among the elements appearing in one or more of those cases were for instance: instilled fear of mob violence; promises of protection or more lenient treatment; the fact that the defendant was feeble minded or of subnormal intelligence; actual abuse—physical or in words; the total absence of friend or relative to consult; the exhibition to defendant of his family in custody wearing handcuffs; no offer of counsel or advice concerning the accused's rights; and in all such cases the extent of the interrogation was more extensive and prolonged, in some lasting over a period of several days. The varying circumstances distinguish those cases materially from our present case.

Defendant here does not rely upon the fact that he was held for more than 20 hours without charge (Criminal Rule 21.14, V.A.M.R.; Section 544.170 RSMo 1949, V.A.M.S.) as in itself invalidating the confession. Our cases are to the contrary. State v. Ellis, 354 Mo. 998, 193 S.W.2d 31, 33–34, certiorari denied 328 U.S. 873, 66 S.Ct. 1374, 90 L.Ed. 1642, and cases there cited; State v. Smith, Mo., 310 S.W.2d 845, certiorari denied 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231; State v. Lee, 361 Mo. 163, 233 S.W.2d 666. We are not bound in this particular by the federal cases or procedure. Ellis, supra. Defendant does rely upon this as a circumstance.

"An adjuration to tell the truth unaccompanied by a threat or promise does not render a confession involuntary." State v. Statler, Mo., 331 S.W.2d 526, 530. And the trial court exercises a considerable discretion in passing upon the admissibility of a confession. State v. Pierce, Mo., 236 S.W.2d 314. We have concluded that the court did not err in admitting the confession, and that the evidence did not establish that the confession was involuntary as a matter of law. State v. Smith, Mo., 310 S.W.2d 845, 851, certiorari denied 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231; State v. Phillips, Mo., 324 S.W.2d 693; Statler, supra. The evidence of nervousness, excitability, emotional instability and a tendency to be easily led could only create a jury issue on the question, at most. Defendant only saw fit to put a small part of his pretrial lay evidence before the jury. Statements to the effect that defendant would be prone to capitulate and confess a felony because of the pressure of questioning, are at best highly speculative and, alone or with the other evidence, are wholly insufficient to show involuntariness as a matter of law; that is the issue here. By Instruction No. 9 the issue of voluntariness was submitted to the jury; it found against the defendant and that issue is concluded.

No question is raised here regarding the propriety of that instruction, or of any other.

We find no reversible error in those parts of the record which we review here under Rule 28.02 without specific preservation of error. The judgment is affirmed.

All concur.