**STATE of Missouri, Respondent,**

v.

**James BROWN, Appellant.**

**No. 55060.**

Supreme Court of Missouri,
Division No. 1.

April 12, 1971.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Bell, Fullwood, Wilson & Harris by James A. Bell, St. Louis, for defendant.

HOUSER, Commissioner.

This is a direct appeal by James Brown from a judgment and sentence of fifteen years' imprisonment on a charge of assault with intent to kill with malice aforethought. § 559.180, V.A.M.S.

Defendant makes two points. First, he asserts error in allowing State's principal witness Rose Mae Macon, the victim of the assault, to testify in the narrative style, and in failing to declare a mistrial when she testified that defendant had served a term in the penitentiary and that he made alcohol. He argues that she was opinionated and assertive and gratuitously made statements prejudicial to defendant which were not responsive to any question; that evidence of other crimes is irrelevant and constitutes reversible error, with certain exceptions not here applicable.

Rose Mae Macon was the estranged wife of defendant at the time of the alleged assault. She and defendant were then separated and living apart from each other. Defendant had previously been in the penitentiary for 25 months. During defendant's incarceration Rose had two children by one Terry Macon. In narrative form, over defendant's objection, and on direct examination Rose testified that defendant came to her house asking her to take him back; that when she refused to do so he called her names, an argument ensued and defendant stabbed her three times with a rusty knife with a 4-inch blade, after first stabbing one of Rose's babies by Macon. She testified that defendant blamed the baby for the estrangement; called her and the baby vile names; stabbed the baby while it lay in bed, threatened to kill Rose, and stated that if she would not have him he did not want anyone else to have her; that when defendant stabbed the baby Rose pushed him away and reached for the baby, whereupon defendant stabbed Rose in the back twice, saying "You ain't going to live"; that she was stabbed once in the kidney and once between the shoulder blades; that after she made an effort to use the telephone to call the police and an ambulance defendant stabbed her again, this time in the area of the chest. Her testimony in important particulars was corroborated.

Rose's allegedly prejudicial statements were not made while she was testifying in narrative form on direct examination, nor were they made in answer to questions put by the State's attorney in an attempt to discredit defendant. They were made on cross-examination in response to specific questions asked by defendant's counsel, in an effort to discredit Rose's image and to rehabilitate that of defendant. The first allegedly voluntary and prejudicial statement was elicited by defendant's counsel in answer to a question whether the baby defendant attacked was Terry Macon's child, born during the time Rose was married to defendant. Rose answered, "Yes, that's right. He was in the penitentiary when

that child was born." Defendant's counsel moved for a mistrial, but asked for no other relief. The court refused to declare a mistrial, whereupon the following ensued (defendant's counsel asking the questions): "Q In other words, then, you say that this child, Mr. Macon's child, was born while you were married to this man, is that right? (Indicating defendant) A Yes, he was in the penitentiary. Q All right. You also had another child that was born to you and Mr. Macon, while you were married to this defendant? A Yes, while he was still away in the Jefferson City penitentiary. Q So, then, you have a total of two children that were born during your marriage to the defendant? A Yes. Q By Mr. Macon? A Yes. Q Did you live with Mr. Macon? A No." Counsel then renewed his motion for a mistrial on the ground that the statements that defendant was in the penitentiary were not responsive to his question. The court denied the motion, observing that counsel knew what she was going to testify to and that he brought it out. Counsel proceeded to develop the fact that Rose was two months' pregnant at the time of her marriage to a third man, and then sought to elicit from her that when defendant received $1,800 from Social Security he had come by Rose's house and brought her $1,000. She denied this. Then counsel asked her how often defendant came to her home and she answered, "Several times, and he made alcohol, he called it tater water, and he would bring it to the house, and he would jump on me, and jump on the children * * *." Counsel objected and moved for a mistrial on the ground that the answer was unresponsive and that it implied that defendant was a bootlegger. Counsel then took the position before the court that defendant was forced to take the stand by the action of the court in not declaring a mistrial and now claims that he was thereby further prejudiced. The court explained to defendant that he did not have to testify and that if he took the stand he would be doing so on his own decision. Defendant took the stand and revealed his criminal record.

The court did not err in its rulings. While defendant was entitled to have the witness confine her answers to the specific questions asked, it was difficult to so confine her because of Rose's glib and voluble method of answering, a characteristic which was apparent from the time she first testified. The court allowed counsel considerable latitude in conducting the cross-examination, during which counsel made a strong effort to demonstrate and emphasize Rose's infidelity and thereby discredit her in the eyes of the jury. Counsel was permitted to cross-examine her on a wide range of matters and when she stated some collateral fact he would object on the ground that she had made a voluntary unresponsive statement. The court, rightfully we think, took the position that defense counsel was inviting these questioned disclosures and, as the court stated, " * * * if he gets into deep water it will be his own fault." The answers connecting defendant with the penitentiary were not wholly unresponsive to the questions and not entirely impertinent. She had been interrogated as to the time when the child was born. In answering the question Rose in her own mind apparently was fixing the time when the child was born with reference to the absence of her husband—while defendant was in the penitentiary. Asked how often defendant came to her home Rose stated "Several times," referred to alcohol and related that on those occasions defendant would "jump on" her and the children. In so doing we think she was merely illustrating the nature and character of defendant's visits, a subject opened up by defendant's counsel. Whether to declare a mistrial on account of the voluntary statement of a witness and whether answers given prejudice a defendant are matters lying largely within the province of the trial judge to determine in the exercise of a wise judicial discretion. Declaring a mistrial in such case is the exercise of a drastic power to be resorted to only in extraordinary circumstances, State v. James, Mo.Sup., 347 S.W.2d 211, 214; only when the incident is

so grievous that its prejudicial effect cannot otherwise be removed. State v. Cage, Mo.Sup., 452 S.W.2d 125, 129 [4, 5]. Here the evidence of defendant's guilt was so strong and convincing that it is doubtful whether Rose's answers to these particular questions had any effect upon the jury in producing the verdict of guilty. If so we believe that any adverse effect was dissipated by Instruction No. 9 which cautioned the jury that evidence of any conviction of prior crime should not be considered in determining defendant's guilt or innocence but should be considered only on the question of defendant's credibility as a witness. Defendant's counsel asked for no relief except a mistrial; did not move that the jury be instructed to disregard the answers; did not request that the answers be stricken from the record and did not ask for any other corrective action. We cannot hold as a matter of law that the court's failure to abort the trial on account of the giving of these answers constituted an abuse of discretion. State v. Statler, Mo.Sup., 331 S.W.2d 526, 532 [13, 14]; State v. Lira, Mo.Sup., 372 S.W.2d 80, 82. The suggestion that these answers forced defendant to take the stand is without merit. The trial judge advised defendant of his constitutional right not to testify, and made it clear to him that taking the stand would be on his own volition.

■ Defendant's second point is that the court erred in giving Instruction No. 5 on the lesser included offense of common assault. Other instructions referred to assault "with intent to kill" with and without malice. Instruction No. 5 authorized a verdict of guilty of common assault if after exonerating defendant of the more serious assault charges the jury found defendant guilty of assault but that defendant "had no intention to kill her *or do her great bodily harm.*" (Our emphasis.) Defendant complains that the italicized language, which was not included in the instructions submitting the more serious assault charges, referred to a crime upon which the jury had not been instructed and therefore was confusing and prejudicially erroneous because it introduced a new element into the case; that the language in an instruction on a lesser included offense should refer to the greater offense in language similar to that used in the preceding instructions, so as not to mislead and bewilder the jury. The only case cited in support of this contention is State v. Steele, 226 Mo. 583, 126 S.W. 406. In that case an instruction in a prosecution for obtaining property under false pretenses by the use of a false abstract of title was held erroneous because the language was susceptible of the construction that the court was declaring as a matter of law that the abstract was not genuine but was false and fraudulent. As an *additional* defect the court pointed out that the instruction twice referred to the false writing purporting to be an abstract of title "as above set out and described" when in fact it had not been set out in the instruction. Although this was held misleading and confusing the court went on to declare that this defect, standing alone, would not warrant reversal of the judgment. This is not authority for *the proposition for which it is cited.*

Common assault is defined in § 559.220, V.A.M.S. as an assault under such circumstances as not to constitute any other offense defined in Chapter 559. One of the offenses defined in Chapter 559 is that of assault with intent to do great bodily harm. § 559.190, V.A.M.S. An instruction on common assault may properly exclude all other more serious offenses, and Instruction No. 5 was not erroneous for having excluded the offense proscribed by § 559.-190, supra. In so doing Instruction No. 5 did not confuse but instead clarified the issue for the jury, and there was no error on the ground suggested by defendant in giving the instruction.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.